[15 NE3d 274, 991 NYS2d 519]

CDR Créances S.A.S., as Successor to Société de Banque Occidentale, Respondent, v Maurice Cohen, Appellant, et al., Defendants.

CDR Créances S.A.S., as Successor to Société de Banque Occidentale, Respondent, v Leon Cohen, Also Known as Leon Levy and Others, et al., Appellants, et al., Defendants.

Argued March 27, 2014; decided May 8, 2014

308

## POINTS OF COUNSEL

*Dewey Pegno & Kramarsky LLP*, New York City (*David S. Pegno* of counsel), for appellants in the first and second above-entitled actions. I. The lower courts improperly entered a default against appellants based on vigorously disputed allegations of

misconduct. (*Campione v New Hampshire Ins. Co.*, 76 AD3d 484; *Roadway Express, Inc. v Piper*, 447 US 752; *Baba-Ali v State of New York*, 19 NY3d 627; *Melcher v Apollo Med. Fund Mgt. L.L.C.*, 52 AD3d 244; *317 W. 87 Assoc. v Dannenberg*, 159 AD2d 245; *Taieb v Hilton Hotels Corp.*, 131 AD2d 257; *Simcuski v Saeli*, 44 NY2d 442; *Koschak v Gates Constr. Corp.*, 225 AD2d 315; *Chambers v NASCO, Inc.*, 501 US 32.) II. Appellants were improperly assessed nine-figure damages on an improper legal theory without an evidentiary hearing. (*Amusement Bus. Underwriters v American Intl. Group*, 66 NY2d 878; *Reynolds Sec. v Underwriters Bank & Trust Co.*, 44 NY2d 568; *Rokina Opt. Co. v Camera King*, 63 NY2d 728; *Matter of Gupta*, 38 AD3d 445; *Starr Found. v American Intl. Group, Inc.*, 76 AD3d 25; *Lama Holding Co. v Smith Barney*, 88 NY2d 413; *CDR Créances S.A. v Euro-American Lodging Corp.*, 40 AD3d 421, 43 AD3d 45; *St. Paul Fire & Mar. Ins. Co. v PepsiCo, Inc.*, 884 F2d 688; *Cardinal Holdings, Ltd. v Indotronix Intl. Corp.*, 73 AD3d 960; *Corman v LaFountain*, 38 AD3d 706.) III. The judgment against Sonia Cohen is unconscionable. (*Montaño v City of Chicago*, 535 F3d 558; *Walley v Leatherstocking Healthcare, LLC*, 79 AD3d 1236; *Green v Dolphy Constr. Co.*, 187 AD2d 635; *Melcher v Apollo Med. Fund Mgt. L.L.C.*, 52 AD3d 244; *Aoude v Mobil Oil Corp.*, 892 F2d 1115.)

*Kellner Herlihy Getty & Friedman LLP*, New York City (*Douglas A. Kellner* of counsel), and *Lewis Johs Avallone Aviles, LLP*, Islandia (*Robert J. Cimino* and *Robert A. Lifson* of counsel), for respondent in the first and second above-entitled actions. I. Clear and convincing evidence received at the evidentiary hearing established that appellants were guilty of egregious misconduct designed to defraud the court. (*Thoreson v Penthouse Intl.*, 80 NY2d 490; *McMunn v Memorial Sloan-Kettering Cancer Ctr.*, 191 F Supp 2d 440; *Arts4All, Ltd. v Hancock*, 12 NY3d 846; *Kihl v Pfeffer*, 94 NY2d 118; *Turk Eximbank-Export Credit Bank of Turkey v Bicakcioglu*, 81 AD3d 494; *Figiel v Met Food*, 48 AD3d 330; *Di Russo v Kravitz*, 21 NY2d 1008; *Birsett v General Acc. Ins. Co. of Am.*, 241 AD2d 683; *Garnett v Hudson Rent A Car*, 258 AD2d 559.) II. The court properly assessed CDR Créances S.A.S.'s actual damages based on documentary evidence. (*Rokina Opt. Co. v Camera King*, 63 NY2d 728; *Bingham v New York City Tr. Auth.*, 99 NY2d 355; *CDR Créances S.A. v Euro-American Lodging Corp.*, 40 AD3d 421; *Flamm v Noble*, 296 NY 262; *Miot v Miot*, 24 Misc 3d 1224[A], 2009 NY Slip Op 51605[U], 78 AD3d 464; *Eighteen Holding Corp. v Drizin*, 268

AD2d 371; *Bailon v Guane Coach Corp.*, 78 AD3d 608; *American Tr. Ins. Co. v Faison*, 242 AD2d 201; *Merrill Lynch, Pierce, Fenner & Smith v Arcturus Bldrs.*, 159 AD2d 283.)

## OPINION OF THE COURT

RIVERA, J.

In this appeal we conclude that where a court finds, by clear and convincing evidence, conduct that constitutes fraud on the court, the court may impose sanctions including, as in this case, striking pleadings and entering default judgment against the offending parties to ensure the continuing integrity of our judicial system. With one exception, the record on this appeal supports such sanctions, and we therefore affirm, in part, the Appellate Division (104 AD3d 17 [1st Dept 2012]).

## I

This appeal arises from fraudulent conduct by defendants during the course of litigation by plaintiff, CDR Créances S.A.S., to recover wrongfully diverted and concealed proceeds of a loan agreement. There is an extensive history of legal actions that is the backdrop for the current appeal, involving numerous individuals and businesses, claims of unlawful money and stock transfers, and charges of manipulation of offshore business entities in furtherance of a conspiracy to conceal funds from plaintiff. Despite the complexities of the various financial matters involved, the focus of the years of litigation is quite simple: the recovery of payment on a loan agreement entered into as part of a hotel business venture. Several of plaintiff's New York legal actions have asserted that defendant Maurice and his son Leon Cohen have conspired to avoid repayment by denying their ownership and control over entities used to conceal the converted funds.

In 1990 Société de Banque Occidentale (SDBO), the subsidiary of a major French bank and plaintiff's predecessor in interest, entered a partnership with SNC Coenson International et Cie (SNC), controlled by defendant Maurice Cohen. The purpose of the partnership was to develop the Flatotel hotel in Paris, France, as part of a worldwide franchise, which SDBO agreed to finance. Later that same year, SDBO and SNC entered an agreement and became shareholders of Euro-American Lodging Corporation (EALC), an American corporation also controlled by defendant Maurice Cohen, for the purpose of converting a Manhattan building into a Flatotel hotel (New York Flatotel).

Then, in 1991, SDBO and EALC entered into a loan agreement, governed by French law, whereby SDBO would provide $82,704,990 for acquisition and development of the Manhattan project and EALC would pay property taxes.

Problems developed between SDBO and EALC, and SDBO refused to make any further payments on the loan agreement, alleging that EALC was diverting funds. Thereafter, EALC commenced suit in France seeking to compel SDBO to make payments in accordance with the loan agreement, and SDBO counterclaimed to accelerate repayment of the loan debt caused by EALC's default. In February 2003, the French court directed EALC to repay the loan and nearly $14 million in unpaid taxes to New York City, pursuant to the loan agreement. In 2005, the New York courts recognized the French judgment against EALC, eventually entering judgments for $95,837,522 and $112,159,088.41 in interest, respectively.[1] The Appellate Division affirmed the judgments (40 AD3d 421 [1st Dept 2007]).

## II

As part of its efforts to recover payment of the loan agreement, plaintiff commenced two actions in Supreme Court in 2003 and 2006, based on what plaintiff alleged was an extensive and intricate conspiracy orchestrated to conceal stock transfers and other transactions by Maurice and Leon Cohen. The 2003 complaint alleged breach of contract, fraud, tortious interference with contract, conversion, and unjust enrichment. The complaint named as defendants Maurice Cohen, EALC, and several corporate entities controlled by Maurice which served as alter egos of each other, including Blue Ocean Finance, Ltd. (Blue Ocean), a Panamanian entity; World Business Center, Inc. (World Business), a New York corporation; and several other business enterprises involved in fraudulent stock transfers which were alter egos for and controlled by Simon Elias, a resident of New York and alleged to be the officer and/or director of several defendant entities.[2] In February 2006, Supreme Court

---

1. In 2003 and 2005, plaintiff initiated separate mortgage foreclose actions in Supreme Court based on EALC's default on the loan agreement. The first foreclosure action was dismissed in 2005, and in 2007 the Appellate Division modified, on the law, and remanded for further proceedings the second foreclosure action (*CDR Créances S.A. v Euro-American Lodging Corp.*, 43 AD3d 45, 55 [1st Dept 2007]).

2. The suit also named Summerson International Establishment, a corporation organized under the laws of the Grand Duchy of Liechtenstein

entered a preliminary conference order in the 2003 action directing defendants who had not yet answered to do so.

Plaintiff's 2006 action alleged, inter alia, that defendants Maurice and Leon Cohen conspired with others—whose identities had now been ascertained—to strip EALC of its operating income—the collateral for the loan agreement—and sold the New York Flatotel, in violation of the loan agreement, for $33 million, the proceeds of which were diverted to Blue Ocean without any payment made to plaintiff on the 2005 judgments. Plaintiff asserted claims for fraud, breach of fiduciary duty, fraudulent conveyance, tortious interference with contract, unjust enrichment and conversion. In addition to Maurice and Leon Cohen, plaintiff named as defendants Maurice's wife Sonia Cohen, former chief executive officer of EALC Robert Maraboeuf, former director of EALC Patricia Habib Petetin, officer of Blue Ocean Allegria Achour Aich, Maurice's secretary and Petetin's sister Joelle Habib, and several corporate entities controlled by Maurice and Leon Cohen, including Blue Ocean and World Business. Defendants Maraboeuf, Aich, and Patricia Habib failed to appear and a default judgment for $265,865,120.81 was entered against them in January 2008.

In August 2010, plaintiff made separate motions to strike the answers of Maurice, Leon and Sonia Cohen, Joelle Habib, and World Business for failure to comply with discovery obligations in both the 2003 and 2006 actions. Defendants Maraboeuf, Aich and Patricia Habib Petetin appeared and moved to vacate their default in the 2006 action. The 2003 and 2006 actions were consolidated and in August 2008, Supreme Court granted plaintiff's motions to strike and denied defendants' motion to vacate the default judgments. All of the defendants appealed and the Appellate Division reversed, citing the brief period that had elapsed between the first discovery order and the defaults, the magnitude of the judgments and the lack of specific prejudice to the plaintiff (*CDR Créances S.A.S. v Cohen*, 62 AD3d 576 [1st Dept 2009]).

---

and an original holder of stock in EALC; Iderval, a corporation organized under the laws of the British Virgin Islands and a holder of new stock issued by EALC without any consideration; Ospin International, Inc., a corporation organized under the laws of the Commonwealth of the Bahamas and a subsequent purchaser of all of EALC's stock; Gama Lodging, LLC, a New York limited liability company that purchased or otherwise received 3,000 shares of EALC stock; and Megainvest Trust Reg., a trust formed and domiciled in the Principality of Liechtenstein that purchased or otherwise acquired stock in EALC. Additionally, the suit named "John Doe" defendants as co-conspirators whose identities had not yet been ascertained.

Upon remand, discovery resumed in the 2003 and 2006 actions. Defendants Maraboeuf, Aich and Patricia Habib Petetin answered and along with defendants Maurice, Leon and Sonia Cohen submitted to depositions. In the course of these depositions, Maurice and Leon Cohen denied any involvement in the sale of the New York Flatotel or the diversion of funds from the loan agreement. Maurice stated he did not own any of the defendant entities and was not involved in the negotiations and sale of the New York Flatotel. Leon denied that he or any member of his family had any ownership interest in any of the defendant entities plaintiff alleged he and his father controlled. Defendant Sonia Cohen stated that she neither had knowledge of, nor ever participated in, her husband's business ventures. Defendant Aich stated that a man by the name of Jim Cox controlled Blue Ocean, that she had met him in person several times, and that he showed an interest in purchasing the New York Flatotel. She named Francois Lavalle as the person in charge of the New York Flatotel, and she denied any knowledge that Maurice Cohen owned any of the defendant entities. Defendant Maraboeuf denied serving as the chief executive officer of EALC, and further stated that Maurice Cohen did not control any of the defendant entities and that he had not had contact with Maurice in several years.

Before the conclusion of discovery in New York, federal authorities arrested Maurice and Leon Cohen in Florida where they were residing, and charged them with tax evasion in connection with the profits made from the proceeds of the sale of the New York Flatotel, and additionally alleged a conspiracy to commit fraud on the New York court by forging documents and suborning perjury. The indictment specifically alleged that Maurice and Leon Cohen forged and falsified documents, and instructed Habib, Petetin, Aich, and Maraboeuf to give false testimony at their depositions that would corroborate Maurice and Leon Cohen's perjury. The federal charges did not implicate Sonia Cohen as part of the conspiracy.

At trial in the United States District Court for the Southern District of Florida, defendants Habib and Petetin (the Habibs) were the government's key witnesses. In exchange for immunity from prosecution, the Habibs testified to an extensive, systematic effort to conceal from Supreme Court Maurice and Leon's efforts to conceal proceeds from the $33 million sale of the New York Flatotel, and the transfer of the proceeds to offshore accounts to avoid taxes. During the federal case, the Habibs also

settled with the plaintiff in the New York 2003 and 2006 actions. A jury subsequently convicted defendants of tax evasion.

At the August 2010 sentencing, the District Court concluded that Maurice and Leon Cohen had perpetrated fraud on Supreme Court in New York. The District Court found Maurice and Leon Cohen's criminal activity "spanned the better part of a decade or more, involved numerous fictitious entities, an elaborate web of shell corporations, and heavy handed [treatment] of a number [of] less sophisticated financially dependant employees in the scheme," and sentenced both Maurice and Leon Cohen to 120 months in federal prison.[3]

Shortly after defendants' sentencing, plaintiff again moved pursuant to CPLR 3126 to strike defendants' pleadings and for a default judgment in the consolidated 2003 and 2006 actions, alleging all of the defendants perpetrated fraud on the court. Supreme Court held a full evidentiary hearing at which the Habibs testified to the Cohens' carefully orchestrated scheme of lies and evidence fabrication. Repeating much of their federal testimony, they recounted a meeting held prior to their depositions in New York, attended by defendants Maurice Cohen, Leon Cohen, Robert Maraboeuf and Allegria Aich, during which the Cohens instructed them and the other defendants to provide false and misleading testimony. At the meeting the Cohens provided the Habibs with a written "script," which plaintiff introduced into evidence at the hearing, which was intended to provide the Habibs with false answers to be given to their attorney and at their depositions. The Cohens told the Habibs to deny knowing both Maurice and Leon, to present themselves as representatives of the entities the Cohens' denied controlling, and to give false testimony at their depositions that would corroborate false testimony of defendants Aich and Maraboeuf. According to the Habibs, the Cohens also created fictitious characters, Francois Lavalle and Jim Cox, to further the Cohens' lies and conceal their actions. Joelle Habib was instructed to testify that Francois Lavalle hired her and that Jim Cox controlled another entity the Cohens denied ownership of. Aich had also falsely testified that Lavalle controlled the New York Flatotel and Cox controlled Blue Ocean. The Habibs further testified that Aich and Maraboeuf repeatedly perjured themselves in their depositions in an effort to conceal Maurice and Leon Cohen's involvement in the conversion of proceeds from the loan agreement and the sale of the New York Flatotel.

---

3. Maurice and Leon Cohen are currently incarcerated.

Based on the testimony and plaintiff's exhibits, Supreme Court determined, by clear and convincing evidence, that defendants had perpetrated a fraud on the court and granted plaintiff's motion, basing its authority on the court's inherent power to take action to preserve the integrity of the judicial process. Supreme Court found, inter alia, Maurice and Leon Cohen had suborned perjury by providing the Habibs with a "script" containing false answers to be given to their attorneys and at their depositions; created Francois Lavalle and Jim Cox—wholly fictitious individuals—and intentionally implicated them as controlling the defendant corporations; forged the affidavits of others in an effort to disclaim ownership of the defendant corporations; secretly paid each of their codefendants legal fees through corporate entities in an effort to financially coerce their false testimony; and intentionally and pervasively ignored court-ordered discovery obligations. Supreme Court also found that defendants Maraboeuf and Aich intentionally lied at their depositions, denying a relationship with Maurice and Leon Cohen. Moreover, defendant Aich urged Maraboeuf and the Habibs to lie in accordance with the scripts they were given, and to falsely state that they paid their own legal fees. Supreme Court struck defendants' answers and entered default judgment (2011 NY Slip Op 33636[U] [2011]).

The Appellate Division affirmed, with one Justice dissenting. The majority concluded that "[t]he ample record is more than sufficient to demonstrate appellants' utter disregard for the judicial process, and while no finding of fraud on the court is necessary to warrant striking the pleadings, appellants' conduct is appropriately characterized as such" (104 AD3d at 24). The majority also concluded that Supreme Court properly awarded damages without a hearing because the damages were determinable by reference to the French court's judgment, recognized in New York. The dissent contended that plaintiff failed to "conclusively demonstrate" deceit, which required a showing that the claims were "undisputed" or "admitted," because the Cohens denied committing fraud, and challenged the credibility of the Habibs' testimony, thus raising a material question of fact (id. at 30, 34 [Catterson, J., dissenting]). We granted defendants leave to appeal (21 NY3d 858 [2013]) and now affirm, in part.

## III

Defendants contend that the Appellate Division erroneously applied a preponderance of the evidence standard to plaintiff's

motion to strike under CPLR 3126, despite its prior decision in *Melcher v Apollo Med. Fund Mgt. L.L.C.* (52 AD3d 244 [1st Dept 2008]), which defendants argue required a finding that the misconduct be "conclusively demonstrated." Defendant further argues that plaintiff failed to "conclusively demonstrate" fraud on the court because Maurice and Leon Cohen have consistently denied any misconduct, and the Habibs' testimony raised credibility issues as to the truth of their statements. Thus, according to defendants, the court was without authority to resolve the outstanding questions for the trier of fact, and should have denied the motion. Defendants further argue that they are entitled to a hearing on damages because plaintiff's claim for damages is not for a "sum certain" and remains subject to factual and legal challenges.

For its part, plaintiff argues that it submitted clear and convincing evidence of a massive scheme of fraud on the court characterized by perjury, witness tampering and falsification of documents, and that defendants' failure to comply with discovery is further proof of defendants' egregious actions. They argue that a standard requiring that the fraud is "conclusively demonstrated" is against precedent and unworkable. As for damages, they assert that Supreme Court correctly entered judgment as calculated by the prior judgments against the defendants.

The parties do not dispute the court's authority to strike the pleadings, but rather the evidentiary standard applicable to a claim of fraud on the court, and what conduct would justify dismissal based on a finding of fraud. As discussed below, we agree with plaintiff that clear and convincing evidence of fraud on the court is necessary to warrant striking the offending party's pleading, and that the record supports the existence of such evidence. We also agree with plaintiff that judgment on damages was properly entered.

## IV

In accordance with CPLR 3126:

> "[i]f any party . . . refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them: . . .

"3. an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party" (CPLR 3126 [3]).

As we stated in *Kihl v Pfeffer,* "[i]f the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity" (94 NY2d 118, 123 [1999]). Compliance requires "a timely response and one that evinces a good-faith effort to address the requests meaningfully" (*id.*). A trial court has discretion to strike pleadings under CPLR 3126 when a party's repeated noncompliance is "dilatory, evasive, obstructive and ultimately contumacious" (*see Arts4All, Ltd. v Hancock,* 54 AD3d 286, 286 [1st Dept 2008], *affd* 12 NY3d 846 [2009], *and affd* 13 NY3d 812 [2009]).

Apart from CPLR 3126, a court has inherent power to address actions which are meant to undermine the truth-seeking function of the judicial system and place in question the integrity of the courts and our system of justice.

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution" (*Anderson v Dunn,* 19 US 204, 227 [1821]).

Fraud on the court involves wilful conduct that is deceitful and obstructionistic, which injects misrepresentations and false information into the judicial process "so serious that it undermines . . . the integrity of the proceeding" (*Baba-Ali v State of New York,* 19 NY3d 627, 634 [2012] [citation and quotation marks omitted]). It strikes a discordant chord and threatens the integrity of the legal system as a whole, constituting "a wrong against the institutions set up to protect and safeguard the public" (*Hazel-Atlas Glass Co. v Hartford-Empire Co.,* 322 US 238, 246 [1944]; *see also Koschak v Gates Constr. Corp.,* 225 AD2d 315, 316 [1st Dept 1996] ["The paramount concern of this Court is the preservation of the integrity of the judicial process"]).

The federal courts have applied the clear and convincing standard in determining whether the offending party's actions constitute fraud on the court (*see e.g. Aoude v Mobil Oil Corp.,* 892

F2d 1115, 1118 [1st Cir 1989]). Characteristic of federal cases finding such fraud is a systematic and pervasive scheme, designed to undermine the judicial process and thwart the non-offending party's efforts to assert a claim or defense by the offending party's repeated perjury or falsification of evidence (*id.* at 1118). Fraud on the court warrants heavy sanctions, including the striking of an offending party's pleadings and dismissal of the action.

For example, in *McMunn v Memorial Sloan-Kettering Cancer Ctr.*, plaintiff commenced suit against her former employer alleging disability discrimination in violation of the Americans with Disabilities Act. Following discovery, defendant moved to dismiss citing "improper conduct of the plaintiff" (191 F Supp 2d 440, 443 [SD NY 2002]). The court found plaintiff "lied at her deposition . . . intentionally and in bad faith, and that her false testimony directly and irrevocably destroyed potentially critical evidence" (*id.* at 448); plaintiff "repeatedly lied and misled [defendant] in an intentional effort to prevent it from deposing [a material witness]" (*id.* at 452); and plaintiff "intentionally spoiled relevant evidence" (*id.* at 454). Accordingly, the court dismissed plaintiff's claim, finding "a lesser penalty . . . would be ineffective as a sanction for [plaintiff's] dishonest behavior, which pervades every aspect of this case" (*id.* at 462).

In *Shangold v Walt Disney Co.* (2006 WL 71672, *1, 2006 US Dist LEXIS 748, *1-4 [SD NY, Jan. 12, 2006, No. 03 Civ 9522 (WHP)], *affd* 275 Fed Appx 72 [2d Cir 2008]), plaintiffs, authors who had submitted story proposals to a publisher owned by defendant, sued defendant claiming that defendant published a book similar to plaintiff's 1995 story (*id.*). Defendant established the plaintiffs' 1995 submission contained several references to a "Palm Pilot," a device which was not in existence when plaintiffs allegedly submitted their story proposal (2006 WL 71672, *5, 2006 US Dist LEXIS 748, *14). Accordingly, the court found plaintiffs intentionally fabricated the basis for their lawsuit, and bolstered that fabrication with perjury (*id.*). In dismissing plaintiffs' action, the court noted "no sanction short of dismissal [would] suffice to deter future misconduct" (2006 WL 71672, *5, 2006 US Dist LEXIS 748, *15).

In *DAG Jewish Directories, Inc. v Y & R Media, LLC* (2010 WL 3219292, *1, 2010 US Dist LEXIS 82388, *1-4 [SD NY, Aug. 12, 2010, No. 09 Civ 7802 (RJH)]), plaintiff sought to enjoin defendants from using their company trade name, or misrepresenting themselves as affiliated with plaintiff in an effort to

attract customers (*id.*). The court ordered a preliminary injunction. Thereafter, plaintiff moved for contempt against defendants, submitting a contract allegedly used by defendants that included plaintiff's trade name, in violation of the court's order (2010 WL 3219292, *2, 2010 US Dist LEXIS 82388, *6). The court held a full evidentiary hearing in which it found the contract submitted by plaintiff was a blatant forgery (2010 WL 3219292, *4, 2010 US Dist LEXIS 82388, *10-12), and concluded "nothing less than outright dismissal would deter similar misconduct" (2010 WL 3219292, *5, 2010 US Dist LEXIS 82388, *17).

In contrast, courts have failed to find egregious conduct constituting fraud on the courts where the moving party fails to meet its evidentiary burden (*see e.g. Passlogix, Inc. v 2FA Tech., LLC*, 708 F Supp 3d 378, 401 [SD NY 2010] ["(plaintiff) has not presented clear and convincing evidence that (defendant perpetrated fraud)"]); the conduct constitutes isolated instances of perjury about matters not central to the issues in the case (*see e.g. Carling v Peters*, 2013 WL 865842, *10, 2013 US Dist LEXIS 32808, *31 [SD NY, Mar. 8, 2013, No. 10 Civ 4573 (PAE) (HBP)] [defendant's conduct was "insignificant, collateral and (did) not give rise to sanctions pursuant to the Court's inherent power"]); or the offending party offers "equally plausible alternative explanations" for discrepancies in testimony or evidence (*see Zimmerman v Poly Prep Country Day Sch.*, 2012 WL 2049493, *34, 2012 US Dist LEXIS 78816, *109 [ED NY, June 6, 2012, No. 09 CV 4586 (FB)]).

■ The evidentiary standard applied by the federal courts is sufficient to protect the integrity of our judicial system, and discourage the type of egregious and purposeful conduct designed to undermine the truth-seeking function of the courts, and impede a party's efforts to pursue a claim or defense. We adopt this standard and conclude that in order to demonstrate fraud on the court, the nonoffending party must establish by clear and convincing evidence that the offending "party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action" (*McMunn*, 191 F Supp 2d at 445, citing *Skywark v Isaacson*, 1999 WL 1489038, *14, 1999 US Dist LEXIS 23184, *50-51 [SD NY, Oct. 14, 1999, No. 96 Civ 2815 (JFK)], *affd* 2000 WL 145465, 2000 US Dist LEXIS 1171 [SD NY, Feb. 9, 2000]). A court must be persuaded that the fraudulent conduct, which may include proof of fabrication of evidence, perjury, and

falsification of documents concerns "issues that are central to the truth-finding process" (*McMunn*, 191 F Supp 2d at 445). Essentially, fraud upon the court requires a showing

> "that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense" (*McMunn*, 191 F Supp 2d at 445, quoting *Aoude*, 892 F2d at 1118).

A finding of fraud on the court may warrant termination of the proceedings in the nonoffending party's favor (*see e.g. McMunn*, 191 F Supp 2d at 462 ["(defendant) deserves the harsh sanction of dismissal"]; *Shangold*, 2006 WL 71672, *5, 2006 US Dist LEXIS 748, *15 [plaintiffs' fabrication of evidence warrants dismissal]; *Hargrove v Riley*, 2007 WL 389003, *11, 2007 US Dist LEXIS 6899, *37-39 [ED NY, Jan. 31, 2007, No. CV-04-4587 (DGT)] [same]; *DAG Jewish Directories*, 2010 WL 3219292, *5, 2010 US Dist LEXIS 82388, *17 [same]). For "when a party lies to the court and [its] adversary intentionally, repeatedly, and about issues central to the truth-finding process, it can fairly be said that [the party] has forfeited [the] right to have [the] claim decided on the merits" (*McMunn*, 191 F Supp 2d at 445). Therefore, once a court concludes that clear and convincing evidence establishes fraud on the court, it may strike a pleading and enter a default judgment.

We caution that dismissal is an extreme remedy that "must be exercised with restraint and discretion" (*Chambers v NASCO, Inc.*, 501 US 32, 44 [1991]; *accord Dodson v Runyon*, 86 F3d 37, 39 [2d Cir 1996] ["We have long recognized that dismissal is a harsh remedy"]; *McMunn*, 191 F Supp 2d at 461 ["dismissal is a harsh sanction to be used only in extreme situations"]). Dismissal is most appropriate in cases like this one, where the conduct is particularly egregious, characterized by lies and fabrications in furtherance of a scheme designed to conceal critical matters from the court and the nonoffending party; where the conduct is perpetrated repeatedly and wilfully, and established by clear and convincing evidence, such as the documentary and testimonial evidence found here. Dismissal is inappropriate where the fraud is not "central to the substantive issues in the case" (*Rezende v Citigroup Global Mkts., Inc.*, 2011 WL 1584603, *6, 2011 US Dist LEXIS 45475, *17 [SD NY,

Apr. 27, 2011, No. 09 Civ 9392 (HB)]), or where the court is presented with "an isolated instance of perjury, standing alone, [which fails to] constitute a fraud upon the court" (*McMunn*, 191 F Supp 2d at 445, citing *Gleason v Jandrucko*, 860 F2d 556, 560 [2d Cir 1988]). In such instances, the court may impose other remedies including awarding attorney fees (*Rezende*, 2011 WL 1584603, *6, 2011 US Dist LEXIS 45475, *18), awarding other reasonable costs incurred (*Sanchez v Litzenberger*, 2011 WL 672413, *8, 2011 US Dist LEXIS 18528, *21 [SD NY, Feb. 24, 2011, No. 09 Civ 7207 (THK)] ["Plaintiff will be required to reimburse Defendants for the expenses and fees incurred in rooting out Plaintiff's true identity"]), or precluding testimony (*Ades v 57th St. Laser Cosmetica, LLC*, 2013 WL 2449185, *12, 2013 US Dist LEXIS 79864, *35 [SD NY, June 6, 2013, No. 11 Civ 8800 (KNF)]). In the rare case where a court finds that a party has committed fraud on the court warranting dismissal, the court should note why lesser sanctions would not suffice to correct the offending behavior (*see Dodson*, 86 F3d at 39 ["one of the factors that should inform a trial court's decision [whether to dismiss] is the suitability of lesser sanctions"]).

Defendants argue that because the potential sanctions are severe and include the possibility of dismissal, a court must find that the evidence "conclusively demonstrates" fraud. Defendants would impose a standard which requires proof that lies and falsifications are admitted or undisputed. However, such a standard is theoretically unsupportable, as well as unworkable in practice, because it is the unusual and rare case where there will not be some dispute—regardless of its significance to the matter before the court—as to the conduct and its fraudulent nature. Defendants' proposed evidentiary standard would encourage parties to "create a dispute" by merely protesting the truth of the allegations. Such standard would permit fraud to continue, regardless of the viability of the contentions creating the purported "dispute." In other words, defendants' standard would permit a party to escape a court's consideration of claims of egregious acts of deceit by presenting bare denials of the truth of the allegations. Thus, the "conclusively demonstrates" standard risks setting the bar too high to prevent and discourage fraud on the court.

## V

■ Here, with the exception of Sonia Cohen as discussed below, we perceive no error in the Appellate Division's order affirming the striking of defendants' answers and entering a

default judgment. The record reveals numerous instances of perjury, subornation of perjury, witness tampering and falsification of documents by defendants. As Supreme Court and the Appellate Division described in detail, Maurice and Leon Cohen sought to mislead the court about their ownership interests in the defendant corporations, as well as the conversion of the proceeds from the loan agreement and the sale of the New York Flatotel. The record shows that the Habibs produced the script provided by Maurice and Leon Cohen, which demonstrated that codefendants Aich and Maraboeuf were entirely dishonest in their assertions that Maurice and Leon did not own any of the defendant entities and that neither had a relationship with Maurice Cohen. Moreover, the script revealed that defendant Maraboeuf was blatantly lying about his role at EALC and his assertion that he had no contact with Maurice Cohen for several years. Additionally, all of the defendants lied about the payment of their legal fees, which in fact were paid by entities controlled by Maurice and Leon Cohen. Defendant Aich testified regarding her multiple meetings with Jim Cox and conversations with Francois Lavalle—completely aware that these were fictitious individuals, fabricated by Maurice and Leon Cohen. All this conduct was in furtherance of one goal: to hide Maurice and Leon's connections to the alleged theft, and conceal the location of the funds pursued by the plaintiff. Thus, the defendants intended to undermine the New York actions in which plaintiff sought to discover and procure the concealed proceeds of the loan agreement, and committed a fraud on the court.

In determining the proper sanctions to be imposed, Supreme Court found that Maurice and Leon Cohen intentionally sought to deceive the court and the plaintiff by concealing their involvement in the sale of the New York Flatotel. The conduct prejudiced the plaintiff by impeding its ability to obtain true discovery and forcing plaintiff to spend enormous amounts of money and time to prove its case. Moreover, the conduct was not isolated and defendants did not attempt to correct their misconduct. In considering a lesser sanction, the court concluded that the deception perpetrated by Maurice and Leon Cohen would continue if the lawsuit was allowed to proceed. These factors were properly considered by the court (see McMunn, 191 F Supp 2d at 446; see also Shangold, 2006 WL 71672, *4, 2006 US Dist LEXIS 748, *11-12; DAG Jewish Directories, 2010 WL 3219292, *4, 2010 US Dist LEXIS 82388, *10-11; Rezende, 2011 WL 1584603, *4, 2011 US Dist LEXIS 45475, *12-13), and the record fully supports the sanctions imposed.

Defendants argue that Supreme Court overstepped its authority because the evidence was in dispute and there were credibility issues related to the Habib sisters' testimony which must be resolved by the trier of fact. However, Supreme Court's decision states quite clearly that the court did not rely solely on the Habib sisters' testimony, but found, additionally, that Maurice and Leon Cohen's "fraud goes beyond the [subornation] of perjury and witness tampering because they also forged and falsified documents that provided additional support for their defense." In addition to the testimony of the Habibs, Supreme Court indicated it reviewed the script provided by the Cohens, deposition testimony, an affidavit from the attorney who represented the buyers of the New York Flatotel, and "bank records and other documents." After a review of the documentary evidence, Supreme Court found Maurice and Leon Cohen "falsified and forged . . . a number of promissory notes," and that the Cohens further "fabricated corporate records and [shareholder] affidavits." Accordingly, Supreme Court's findings support the conclusion that defendants committed fraud on the court, and warrant striking defendants' answers and entering default judgment.

However, the evidence is insufficient to justify the default against defendant Sonia Cohen. In support of striking this defendant's answer, plaintiff points to the fact that she lied about her involvement in her husband's businesses and the concealment of assets by Maurice and Leon, and thus perjured herself during her deposition. The record establishes that Sonia Cohen operated a perfume shop owned by her husband in which defendant Maraboeuf—who she denied knowing—was the manager, and that she was a signatory on at least one corporate bank account controlled by Maurice and Leon Cohen. Her denials are hardly equivalent to the actions of the other defendants, who lied about Maurice and Leon's ownership and management of the New York Flatotel and the business entities which were used as vehicles to siphon funds. Moreover, no direct evidence established that she participated in the meeting regarding the false deposition testimony. Although she is not innocent of misconduct, her statements and denials were not central to the success of the scheme to hide information from the court and the plaintiff. Accordingly, with respect to defendant Sonia Cohen, the order of the Appellate Division should be modified to vacate the judgment as against her.

Lastly, defendants assert that they are entitled to a hearing on damages because the plaintiff's claims are subject to numerous

legal and factual challenges. We disagree. The Appellate Division was correct to conclude that the plaintiff's damages were based on the French judgments and the documents submitted to the court. Thus, no hearing was required.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and PIGOTT concur; Judge ABDUS-SALAAM taking no part.

Order modified, without costs, by remitting to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.