■ In the Matter of CDR Créances S.A.S., Respondent, v First Hotels & Resorts Investments, Inc., Also Known as Les Premiers Investissements Hoteliers & Villegiature, Inc., Appellant, et al., Respondents. [34 NYS3d 32]—

Order, Supreme Court, New York County (Lawrence K. Marks, J.), entered December 11, 2014, which, among other things, denied the motion of respondent First Hotels & Resorts Investments, Inc. to dismiss the proceeding as against it for lack of personal jurisdiction or, in the alternative, to strike prejudicial and irrevelant allegations in the petition, unani-

mously reversed, on the law, without costs, and the motion to dismiss granted. The Clerk is directed to enter judgment dismissing the proceeding as against First Hotels & Resorts Investment, Inc.

In 1991, Société de Banque Occidentale (SDBO), the predecessor-in-interest to petitioner CDR Créances S.A.S. (CDR), loaned nonparty Euro-American Lodging Corp. (EALC) more than $82 million to acquire a Manhattan property and turn it into a hotel. Judgment debtor Maurice Cohen controlled EALC. EALC later defaulted on the loan, and SDBO sued EALC in France to accelerate repayment of the loan debt. In February 2003, the French court directed EALC to repay the loan, and in 2005, the New York courts recognized the French judgment against EALC and entered judgments against it (2005 judgments).

As part of its efforts to recover payment of the loan agreement, CDR commenced two actions in the New York Supreme Court in 2003 and 2006, based on what CDR alleged was an extensive conspiracy orchestrated to conceal stock transfers and other transfers by Maurice Cohen and his son, judgment debtor Leon Cohen. The 2003 complaint named as defendants Maurice Cohen, EALC, and several corporate entities that Maurice Cohen controlled and that served as alter egos of one another, including Blue Ocean Finance, Ltd. The 2006 action alleged that Maurice Cohen and Leon Cohen conspired with others to strip EALC of its operating income, which was the collateral for the loan agreement. Further, the 2006 action alleged that Maurice Cohen and Leon Cohen sold the New York hotel for $33 million, in violation of the loan agreement, and diverted the proceeds to Blue Ocean without making payments to CDR on the 2005 judgments. CDR named as defendants, among others, Robert Maraboeuf, the former chief executive officer of EALC and a judgment debtor in this proceeding; Allegria Achour Aich, an officer of Blue Ocean and also a judgment debtor in this proceeding; and several corporate entities that Maurice Cohen controlled, including Blue Ocean. The 2003 and 2006 actions were eventually consolidated.

Shortly after August 2010, CDR moved to strike defendants' pleadings and for a default judgment in the consolidated 2003 and 2006 actions, basing the motion on allegations that defendants had perpetrated a fraud on the court. The IAS court granted the motion, and judgment was entered against Maurice Cohen, among others, in September 2011. This Court affirmed,

and the Court of Appeals affirmed this Court's decision in part (*CDR Créances S.A.S. v Cohen*, 23 NY3d 307, 324 [2014]).*

Meanwhile, in 2004, Maurice Cohen had created respondent First Hotels, a Quebec corporation, to buy a condominium unit at 845 United Nations Plaza in Manhattan. Maurice Cohen, his wife, and Leon Cohen owned First Hotels, and Maurice Cohen controlled it. First Hotels obtained a mortgage from nonparty HSBC Bank USA, where it had a bank account from December 2003 through December 2008.

In February 2009, CDR sued First Hotels and HSBC, among others, seeking the sale of the condominium unit to satisfy CDR's 2008 judgments against Blue Ocean, Maraboeuf and Aich, among others (the 2009 action). According to the complaint, First Hotels had no apparent source of income and received its funding from Cohen entities, apparently without any compensation to those entities. Further, the complaint alleged, the Cohens used the loan proceeds they diverted from CDR to set up First Hotels and to use it as a shell corporation for the purpose of hiding their fraudulently acquired assets. The Cohens then allegedly took the proceeds that Blue Ocean owed to CDR and transferred those proceeds to First Hotels in order to acquire the condominium unit. CDR alleged that the Cohens then personally used the condominium unit as a New York City pied-à-terre without any compensation to Blue Ocean.

In connection with the 2009 action, petitioner filed a notice of pendency against the condominium unit. First Hotels found a buyer for the unit, but the buyer would close only if the notice of pendency was cancelled. By order entered June 26, 2009, the court in the 2009 action granted First Hotels' motion to vacate and cancel the notice of pendency on condition that First Hotels place the net proceeds of the sale of the unit in an interest-bearing escrow account. Accordingly, on July 20, 2009, First Hotels deposited $2,995,120.71 in escrow with respondent Stewart Title Insurance Company.

In the first half of 2012, based on documents that HSBC had produced in response to a federal subpoena, CDR moved for leave to amend its complaint in the 2009 action. The IAS court denied the motion, and this Court affirmed, noting that the proposed allegations of fraud and conspiracy to defraud against First Hotels were supported by the same allegedly newly discovered evidence as underlay the proposed amendment

---

* The Court of Appeals found that the evidence was insufficient to justify the default against Maurice Cohen's wife, who is not a party in this action (23 NY3d at 324).

against HSBC, and that the new evidence did not warrant amendment of the complaint (*see CDR Créances S.A.S. v First Hotels & Resorts Invs., Inc.*, 101 AD3d 485, 486-487 [1st Dept 2012] [the 2012 *CDR Créances* decision]). Moreover, this Court found, to the extent First Hotels could be deemed liable for amounts owed under the judgments that CDR had obtained, CDR's appropriate course was to seek amendment of the judgments, not to seek relief by way of an unrelated action (*id.* at 487). Indeed, this Court noted, CDR's counsel "stated at oral argument that if the court denied amendment, [CDR] would bring a special proceeding pursuant to CPLR 5225" (*id.*). In addition, this Court held that "no allegation in the proposed amended complaint suffices to connect First Hotels, an entity that did not even exist until 2004, . . . with a fraud by the Cohens that occurred decades ago, regardless of any use the Cohens may ultimately have made of it" (*id.*).

In January 2014, CDR commenced this turnover proceeding under CPLR 5225 (b). In an amended petition, CDR sought a judgment and order that First Hotels was jointly and severally liable for satisfaction of the outstanding balance of CDR's September 2011 judgment against Maurice Cohen, Leon Cohen, Maraboeuf, and Aich in the amount of $186,325,301.01. The amended petition, noting that First Hotels had been Maurice Cohen's alter ego since its inception, sought to pierce the corporate veil on the basis that the judgment debtors, particularly Maurice Cohen, exercised complete dominion and control of First Hotels and used First Hotels to conceal the proceeds of their fraud. CDR also requested that the court order Stewart Title Insurance Company to turn over to CDR all sums that it was holding as the net proceeds from the sale of the condominium unit.

In support of its motion to dismiss for lack of personal jurisdiction, First Hotels noted that it had no assets in New York, owned no real property in New York, had no offices or employees in New York, and had no bank accounts in New York. First Hotels also noted that, in fact, it had sold its New York condominium unit in 2009.

The IAS court denied First Hotels' motion. In so doing, the court found that it had long-arm jurisdiction over First Hotels under CPLR 302 because First Hotels owned property in New York and had sold that property only so that it could put the funds into an escrow account. The IAS court also noted that the proceeding underlying this appeal "was entirely contemplated by the First Department in its [2012 *CDR Créances*] decision."

We now reverse. To begin, on this appeal, CDR claims that in the 2012 *CDR Créances* decision, this Court stated that the proper procedure to assert First Hotels' liability for the September 2011 judgment against the individual judgment debtors was in a proceeding to enforce the judgment under CPLR 5225. Thus, CDR argues, in essence, that this Court directed it to file this proceeding. But contrary to CDR's assertion, this Court did not, in the 2012 *CDR Créances* decision, so direct CDR. Rather, this Court's reference to CPLR 5225 was simply to show that CDR recognized that it could not enforce an existing judgment by commencing a new action against a party that was not already one of the judgment debtors. At any rate, the jurisdictional hurdles to a CPLR 5225 proceeding, discussed *infra*, were not before the Court in the earlier appeal.

CDR seeks to assert jurisdiction over First Hotels based on CPLR 302 (a) (1) and (4). However, under the circumstances presented here, that section of the CPLR does not confer personal jurisdiction over First Hotels.

CPLR 302 will confer personal jurisdiction "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]; *see also Parke-Bernet Galleries v Franklyn*, 26 NY2d 13, 16 [1970]). Further, "[t]he party asserting long arm jurisdiction must demonstrate that his or her claim arises out of, or has a specific nexus with, the performance of a purposeful statutory act or acts" (Weinstein-Korn-Miller, NY Civ Prac ¶ 302.00 [2d ed 2015]).

When CDR commenced the 2009 action, First Hotels still owned real property within the state—namely, the Manhattan condominium unit. Moreover, the 2009 action arose from First Hotels' ownership of real property, in that CDR sought to force a sale of the unit. In contrast, by the time CDR commenced this proceeding, First Hotels had sold its condominium unit and closed its bank account with HSBC.

Thus, with respect to this proceeding, First Hotels' only contacts with New York were the purchase and sale of the condominium unit. But this turnover proceeding does not arise out of that purchase and sale. At most, CDR could premise jurisdiction on the escrowed funds in the 2009 action, or on ownership of the condominium unit. However, as to the escrowed funds, the mere retention of those funds in New York pending a resolution of the 2009 action is not "transact[ing] . . . business" in New York for purposes of jurisdiction under CPLR 302

(a) (1) (*see Pramer S.C.A. v Abaplus Intl. Corp.*, 76 AD3d 89, 96-97 [1st Dept 2010]; *see also DirecTV Latin Am., LLC v Pratola*, 94 AD3d 628, 629 [1st Dept 2012], *lv denied* 19 NY3d 812 [2012]). Indeed, CDR argues that the funds in escrow do not even properly belong to First Hotels; CDR cannot be heard to argue at the same time that the mere presence of those funds is sufficient to confer personal jurisdiction.

Likewise, ownership of the condominium unit does not, in this case, confer jurisdiction under CPLR 302 (a) (4), as the ownership is not relevant to the claims asserted in this proceeding. First of all, First Hotels sold the unit in 2009, approximately two years before the 2011 judgment was entered and approximately five years before this proceeding was commenced. What is more, First Hotels was created in 2004 to buy the condominium unit, and by the time First Hotels sold that unit, Maurice Cohen's wrongdoing had long since occurred. As we have already held in the 2012 *CDR Créances* decision, ownership of the condominium unit is unrelated to the 2011 judgment or to the wrongdoing that resulted in that judgment.

In light of our decision, we need not consider the parties' remaining arguments. Concur—Mazzarelli, J.P., Moskowitz, Richter and Manzanet-Daniels, JJ.