(September 28, 2017)

◼ 11 ESSEX STREET CORP., Appellant, v TOWER INSURANCE COMPANY OF NEW YORK, Defendant. 11 ESSEX STREET CORP., Appellant, v 7 ESSEX STREET, LLC, c/o VESTA DEVELOPMENT GROUP, et al., Defendants, DESIMONE CONSULTING ENGINEERS et al., Respondents, and JEFFREY M. BROWN ASSOCIATES, INC., Appellant. (And Other Actions.) [63 NYS3d 13]—

Order, Supreme Court, New York County (Geoffrey D. Wright, J.), entered August 27, 2015, which granted defendant DeSimone Consulting Engineers' (DCE) motion for a directed verdict dismissing all claims and cross claims against it, unanimously affirmed, without costs. Order, same court and Justice, entered October 13, 2015, which granted defendant Berzak Gold, P.C.'s (Berzak) motion for a directed verdict dismissing the complaint as against it, unanimously reversed, on the law, without costs, the motion denied, and the matter remanded for a new trial. Amended order, same court and Justice, entered April 28, 2016, which granted Berzak's motion for a directed verdict dismissing defendant Jeffrey M. Brown Associates, Inc.'s (JMB) cross claims and granted JMB's motion for a directed verdict dismissing the claims for gross negligence and punitive damages against it, unanimously modified, on the law, to deny JMB's motion and to deny Berzak's motion as to its breach of contract, contribution and common-law indemnification claims, and otherwise affirmed, without costs.

These appeals arise out of a months-long trial that ultimately

resulted in a mistrial. Over a two-month period, plaintiff, the owner of a five-story walk-up apartment building, called 11 witnesses, including an expert who testified over the course of seven days through two rounds of direct and two rounds of cross-examination. The issue in the case was whether defendants were liable for the damage to plaintiff's building caused when construction on a neighboring site resulted in the alleged shifting of plaintiff's building's foundation. Plaintiff asserted that the underpinning installed to prevent such movement was inadequate. JMB was the general contractor retained by defendant 7 Essex Street, LLC, the owner of three lots next to plaintiff's property, to demolish the buildings on the lots and construct a 10-story condominium building in their place. 7 Essex also retained an architect, and the architect hired defendant DCE to perform the structural design for the new building. Berzak was retained by JMB as a consultant to design an underpinning system.

After plaintiff's expert, Nathaniel Smith, had been subjected to re-cross-examination, and plaintiff's counsel reserved the right to call Smith back for re-redirect, DCE and Berzak announced their intentions to move for a directed verdict. The court stated that it would entertain written submissions. Plaintiff objected, arguing that the end of Smith's testimony was still extant, and that it still had remaining witnesses to call, including an additional expert for whom plaintiff had produced a CPLR 3101 (d) exchange. Further, plaintiff had not yet completed his examination of Berzak's witness, Stuart Gold.

In support of its motion, DCE argued that plaintiff had not made out a prima facie case because Smith, plaintiff's own expert, had testified unequivocally that DCE was not liable. That was because the only connection between DCE and the underpinning was a Statement of Technical Responsibility (TR-1) executed by DCE and filed by it with the Department of Buildings (DOB). The TR-1 represented that DCE would perform controlled inspections of the underpinning. However, DCE pointed to testimony from Smith that in such a scenario the party can only have liability if it actually filed underpinning plans, which DCE indisputably did not. DCE further argued that, in any event, and as acknowledged by Smith, it did not receive 72-hour written notice of commencement of the underpinning work. It also noted that, pursuant to former Administrative Code of the City of New York § 27-195, a party responsible for performing controlled inspections must be given such notice before its obligation is triggered.

In support of its motion for a directed verdict, Berzak argued that the court had already found that Smith was not qualified to opine about whether, by the professional standards in place in 2002, when the underpinning work had been performed, its plan was appropriate. That was because, by Smith's own admission, he was working in Massachusetts at the time and was not familiar with the particulars of New York engineering practice. For that reason, Berzak asserted, plaintiff could not make out a prima facie case against it. Berzak further argued that the underpinning was performed according to a plan it had designed for preliminary purposes only, and which it had not signed or sealed, much less obtained DOB approval for. Accordingly, it had no expectation that JMB would instruct its underpinning contractor to work off the plan. To the extent plaintiff was also seeking to hold Berzak liable based on a TR-1 it signed indicating that it would perform controlled supervision of the underpinning, it noted that it signed its TR-1 after the damage to plaintiff's building had already occurred. Similar to DCE, it also asserted that it did not receive the requisite 72-hour notice.

In opposition to the motions of both DCE and Berzak, plaintiff argued that they were premature. This was because, as noted above, plaintiff's counsel had not yet completed the examination of Smith, nor had he been given an opportunity to call a second structural engineering expert. Further, plaintiff, relying on an earlier decision by Supreme Court that found an issue of fact whether DCE had responsibility for the underpinning by virtue of the TR-1, argued that the trial court was required to allow that issue to reach the jury. JMB opposed the DCE and Berzak motions as well. JMB also argued that the motions were premature, since it had not yet had an opportunity to question Gold, Berzak's witness, nor had it had an opportunity to call its own expert witness to prove DCE's and Berzak's liability. JMB also pointed to trial testimony that Gold had already given, as well as deposition testimony from an engineer employed by Berzak, which it argued demonstrated that there were factual issues regarding Berzak's liability that should have gone to the jury. JMB attached an affidavit from its designated expert explaining how he would have testified concerning Berzak's behavior, which he opined departed from the appropriate standard of care.

In separate orders, the court granted both directed verdict motions. With respect to DCE, the court stated that "[p]laintiff points to no exhibits, in evidence already, or upcoming, that demonstrate [DCE's] involvement with underpinning." It

disregarded the earlier ruling that there was an issue of fact concerning the TR-1, finding that it became irrelevant once the trial commenced. With respect to Berzak, the court pointed to Smith's admitted lack of familiarity with the standards for underpinning design in New York City in 2002, such that plaintiff could not make out a prima facie case. The court further noted that JMB's expert exchange, furnished three years earlier, addressed plaintiff's behavior only, and not Berzak's. Therefore, the court held, it would be prejudicial to Berzak to permit JMB to supplement the disclosure at such a late date.

On the same day the court issued its order directing a verdict in favor of Berzak, it orally declared a mistrial, based on the inability of several jurors to continue. Also on that day, JMB moved for a directed verdict dismissing the gross negligence and punitive damages claims asserted against it by plaintiff. It argued that the evidence showed, at best, ordinary negligence. In opposition, plaintiff argued, again, that the motion was premature because it had not rested its case. It also posited that law of the case controlled, citing an earlier order denying summary judgment on the same issue. On the merits, plaintiff asserted that JMB was grossly negligent in the way it supervised the excavation work, insofar as it consciously ignored signs that without proper underpinning plaintiff was likely to suffer damages. The court granted JMB's motion, noting that plaintiff's expert disclosure did not mention the word "gross" in reference to negligence, and that plaintiff did not make an offer of proof on the issue of recklessness.

Shortly after JMB made its motion, Berzak moved to dismiss all cross claims against it, including a contractual indemnification claim based on its contract with JMB, which provided: "[Berzak] assumes entire responsibility and liability for any and all claims and/or damages of any nature or character whatsoever for which [JMB] shall be liable under the Contract Documents or, by operation of law, with respect to the scope of the work covered by this Consulting Agreement and agrees to indemnify and save [JMB] harmless from and against all claims, demands, personal injuries, including death, to any and all persons, whether employees of [JMB] or others, or otherwise, caused or occasioned thereby, resulting therefrom, arising out of or therefrom, or occurring in connection therewith to the same extent and obligation to which [JMB] has assumed towards Owner under the Contract Documents, or as imposed by law, limited to the scope of the subject matter of this Consulting Agreement." The basis for dismissing the common-law indemnification, contribution, and breach of

contract claims was the same as Berzak's argument for dismissal of plaintiff's claims, which was that no expert competently testified that it was negligent in the way it designed the underpinning system. As for the contractual indemnification issue, Berzak asserted that it executed the contract with JMB two months after Berzak initially performed underpinning design work pursuant to a separate oral contract with the excavation subcontractor, and that there was no evidence that the parties intended for the indemnification clause to apply retroactively. Berzak further claimed that the specific indemnification language in the contract was violative of General Obligations Law § 5-322.1, since it held JMB harmless for its own negligent conduct. In opposition, JMB argued that the motion was procedurally defective since it was made after the mistrial had already been declared. It further repeated its arguments made in opposition to Berzak's own directed verdict motion against plaintiff's claims—namely, that the trial evidence, and its proposed expert testimony, established Berzak's negligence. Finally, JMB disputed that the indemnification language required it to be indemnified for its own negligence.

The court granted Berzak's motion and dismissed JMB's cross claims. The court rejected JMB's contention that the motion was made too late, noting that it was "made with court permission, and after the conclusion of the Plaintiff's liability evidence, so in essence it is addressed to the Plaintiff's prima facie case." The court rejected JMB's arguments as to the merits for the same reason it espoused in granting Berzak's motion against plaintiff. It did not specifically address the issues concerning the indemnification clause.

On appeal, plaintiff argues, as it did below, that, the merits aside, the motions by DCE, Berzak and JMB for directed verdicts were premature.* CPLR 4401 provides, in pertinent part: "Any party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue, or at any time on the basis of admissions."

In interpreting this provision, this Court has held that the

---

* To the extent that the orders granting Berzak's and DCE's motions for a directed verdict were issued upon oral applications and could be considered not appealable as of right (CPLR 5701 [a] [2]), we deem the notices of appeal, in the interest of justice, to be applications for leave to appeal to this Court, and grant leave (see CPLR 5701 [c]; *Mulligan v New York Cornell Med. Ctr.*, 304 AD2d 492, 492 [1st Dept 2003]).

requirement that a party opposing a directed verdict motion must have closed its presentation of evidence "must be strictly enforced" (*Griffin v Clinton Green S., LLC*, 98 AD3d 41, 46 [1st Dept 2012]). Further, we have held that "the grant of a dismissal [pursuant to CPLR 4401] prior to the close of the opposing party's case will be reversed as premature, even if the ultimate success of the opposing party in the action is improbable" (*id.*, quoting *Cass v Broome County Coop. Ins. Co.*, 94 AD2d 822, 823 [3d Dept 1983]). This Court in *Griffin* emphasized the importance of each party being "afford[ed] . . . a day in court" (98 AD3d at 46 [internal quotation marks omitted]).

In arguing that its motion was ripe, Berzak points to the plethora of evidence plaintiff was permitted to put in over the course of over two months, arguing that plaintiff effectively had its day in court. Berzak asserts that plaintiff does not explain precisely what it anticipated its yet-to-be-called witnesses would have testified to, had the trial proceeded. Further, it claims that, given the already voluminous amount of testimony and evidence before the court, coupled with the court's decision to find Smith unqualified to opine on much of the work performed by Berzak, those witnesses would not have made a material difference to the court's ability to direct a verdict dismissing plaintiff's claims against it. These arguments must be rejected. *Griffin* explicitly instructs us, in considering a directed verdict motion before the close of evidence, to disregard the ultimate chances of the opposing party's success, and to consider only whether that party had rested its case. Here, plaintiff never closed. Accordingly, it was error for the court to entertain the motion. Further, plaintiff never expressly waived its right to complete its examination of Berzak's witness, nor did plaintiff waive examination of any of the other witnesses on its list. In addition, to the extent Smith was found to be unqualified to render parts of his opinion, Berzak has not sufficiently established that plaintiff's entire theory of liability against it is such that an expert's testimony was necessary to prove all of its elements.

Berzak essentially asks us to endorse a system whereby a party can make a directed verdict motion at any time during trial, so long as the party opposing the motion has put in some unspecified quantum of evidence that, though it may not have been everything the opposing party intended to put in, was sufficient for the trial court to determine that there were no issues of fact and it could decide for the movant as a matter of law. We decline to do so. First, such a system would contradict *Griffin*, which, again, stresses the actual close of evidence, not

its "effective" close. Moreover, to require a trial court to determine whether cutting off the opposing party's presentation of evidence would or would not prejudice it would place an unnecessary burden on the court, which would be put to the unenviable procedural burden of having to analyze the evidence already presented by the opposing party, as well as the evidence not yet presented.

JMB argues that its motion was not premature because plaintiff had already closed its presentation of evidence related to gross negligence, the only issue addressed in JMB's motion. However, nothing in the record indicates that plaintiff formally closed its presentation of evidence with respect to any aspect of the case, including gross negligence. Further, even if such a formal declaration is unnecessary, the ultimate determination of whether JMB was grossly negligent was to be drawn from a holistic view of all of plaintiff's evidence, and JMB offers no indication that plaintiff's remaining evidence would not further elucidate the extent of JMB's disregard for plaintiff's property (contrast Diamond v Bank of N.Y., 199 AD2d 65, 66 [1st Dept 1993] ["Plaintiff's motion for a directed verdict was timely since (the opposing party) had closed its evidence *with respect to the issue for which judgment was sought*" (emphasis added)]). We note that, contrary to JMB's argument, punitive damages would be available to plaintiff in connection with any finding by the jury of gross negligence. This Court made that clear in deciding an earlier appeal in this action, holding that "[a]s the faulty underpinning of a multistory building implicates public safety, if gross negligence is proved, punitive damages may properly be awarded" (11 Essex St. Corp. v Tower Ins. Co. of N.Y., 81 AD3d 516, 517 [1st Dept 2011]).

With respect to DCE, we find that the directed verdict motion was appropriately granted. CPLR 4401 expressly authorizes a directed verdict "at any time on the basis of admissions," and Smith admitted that DCE was free from liability. Under cross-examination by DCE's counsel, Smith acknowledged that the only connection between DCE and any underpinning on the site was its execution of the TR-1 that, among other responsibilities, ostensibly obligated it to perform controlled inspections of any underpinning performed in connection with the project. Smith further acknowledged that, because DCE's plans did not include underpinning, and because, even if DCE had a "technical" responsibility based on the TR-1, it was absolved of that obligation because it did not receive the 72-hour notice required by Administrative Code § 27-195, he "[didn't] see any issues with" DCE's performance.

Notably, on redirect, plaintiff's counsel made no effort whatsoever to rehabilitate Smith with respect to his admission about DCE's liability.

It is worth noting that Smith made no similar admission as to Berzak's liability. While Smith also acknowledged that Berzak did not receive 72-hour notice of the underpinning, plaintiff's theory of liability against Berzak runs much deeper than its theory against DCE. Not only does plaintiff allege that Berzak failed to perform controlled inspections of the underpinning, it also asserts that Berzak failed to properly inspect the premises before designing an underpinning plan, and failed to communicate to JMB that its initial plan was preliminary only and not intended to form the basis for the actual implementation of an underpinning system. Smith did not absolve Berzak of liability for these claims as he did for DCE.

Because JMB's cross claims against Berzak for breach of contract, common-law indemnification and contribution depended on the evidence presented by plaintiff in its direct claim against Berzak, we must deny Berzak's motion for a directed verdict dismissing those cross claims, since, as discussed above, plaintiff's claim against Berzak should not have been dismissed. However, it was appropriate for the court to direct a verdict in Berzak's favor against JMB with respect to the contractual indemnification claim. The only salient evidence supporting that claim, the contract between Berzak and JMB, was in evidence when Berzak made its motion, so the issue was ripe for adjudication as a matter of law.

Further, we find, as a matter of law, that Berzak was entitled to dismissal of the cross claim. Under General Obligations Law § 5-322.1, an indemnitee may not require an indemnitor to indemnify it against its own negligence. The Court of Appeals has held that a contract that purports to indemnify the indemnitee against its own negligence is not merely void as to the portion requiring indemnification of the indemnitee's negligence, but that the entire indemnification agreement is void, and the promisee may not collect under any part of the agreement (*see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 786 [1997]).

Here, the indemnification clause broadly imposes an indemnification obligation on Berzak, without limitation in terms of JMB's negligence. It does not include limiting phrases that indicate partial indemnification (*cf. Dutton v Pankow Bldrs.*, 296 AD2d 321, 322 [1st Dept 2002] ["to the fullest extent permitted by applicable law," and "exclud(ing) only liability created by the (general contractors's) (sic) sole and exclusive

negligence"], *lv denied* 99 NY2d 511 [2003]). Indeed, JMB does not argue that there are such limiting phrases. Rather, it argues only that "the Agreement contains no requirement that Berzak Gold indemnify JMB against JMB's own acts of negligence." However, the plain language clearly contemplates such full indemnification. Concur—Sweeny, J.P., Manzanet-Daniels, Mazzarelli, Moskowitz and Kapnick, JJ.

