<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>11 Essex St. Corp. v Tower Ins. Co. of N.Y.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Tower Ins. Co. of N.Y., 11 Essex St. Corp. v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06709</MDSlipOpNo> 

<MDIndexTitle>11 Essex St. Corp. v Tower Ins. Co. of N.Y.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>11 Essex St. Corp. v Tower Ins. Co. of N.Y.</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>11 Essex Street Corp., Respondent Appellant, v Tower Insurance Company of New York, Respondent Appellant.</Party> 

</PartyBlock> 

Sweeny, J.P., Manzanet-Daniels, Mazzarelli, Moskowitz, Kapnick, JJ. 

 

 

 

4157 11 Essex Street Corp., 

 Plaintiff-Appellant, 

 

 -against- 

 

 Tower Insurance Company of New York, 

 Defendant. 

 - - - - - 

 11 Essex Street Corp., 

 Plaintiff-Appellant, 

 

 -against- 

 

 7 Essex Street, LLC c/o Vesta Development 

 Group, 

 Defendant, 

 

 DeSimone Consulting Engineers, et al., 

 Defendants-Respondents, 

 

 Jeffrey M. Brown Associates, Inc., 

 Defendant-Appellant, 

 

 Big Apple Wrecking and Constructing Group, 

 Defendant. 

 - - - - - 

 [And Other Actions] 

 _________________________ 

 

Weg & Myers, P.C., New York (Dennis T. D'Antonio of counsel), for 11 Essex Street Corp., appellant. 

 

 

Harrington, Ocko & Monk, LLP, White Plains (Kevin J. Harrington of counsel), for Jeffrey M. Brown Associates, Inc., appellant. 

 

Zetlin & De Chiara LLP, New York (Raymond T. Mello of counsel), for DeSimone Consulting Engineers, respondent. 

 

Morris Duffy Alonso & Faley, New York (Iryna S. Krauchanka of counsel), for Berzak Gold, P.C., respondent. 

 _________________________ 

 Order, Supreme Court, New York County (Geoffrey D. Wright, J.), entered August 27, 2015, which granted defendant DeSimone Consulting Engineers' (DCE) motion for a directed verdict dismissing all claims and cross claims against it, unanimously affirmed, without costs. Order, same court and Justice, entered October 13, 2015, which granted defendant Berzak Gold, P.C.'s (Berzak) motion for a directed verdict dismissing the complaint as against it, unanimously reversed, on the law, without costs, the motion denied, and the matter remanded for a new trial. Amended order, same court and Justice, entered April 28, 2016, which granted Berzak's motion for a directed verdict dismissing defendant Jeffrey M. Brown Associates, Inc.'s (JMB) cross claims  and granted JMB's motion for a directed verdict dismissing the claims for gross negligence and punitive damages against it, unanimously modified, on the law, to deny JMB's motion and to deny Berzak's motion as to its breach of contract, contribution and common-law indemnification claims, and otherwise affirmed, without costs. 

 These appeals arise out of a months-long trial that ultimately resulted in a mistrial. Over a two-month period, plaintiff, the owner of a five-story walk-up apartment building, called 11 witnesses, including an expert who testified over the course of seven days through two rounds of direct and two rounds of cross-examination. The issue in the case was whether defendants were liable for the damage to plaintiff's building caused when construction on a neighboring site resulted in the alleged shifting of plaintiff's building's foundation. Plaintiff asserted that the underpinning installed to prevent such movement was inadequate. JMB was the general contractor retained by defendant 7 Essex Street, LLC, the owner of three lots next to plaintiff's property, to demolish the buildings on the lots and construct a 10-story condominium building in their place. 7 Essex also retained an architect, and the architect hired defendant DCE to perform the structural design for the new building. Berzak was retained by JMB as a consultant to design an underpinning system. 

 After plaintiff's expert, Nathaniel Smith, had been subjected to re-cross-examination, and plaintiff's counsel reserved the right to call Smith back for re-redirect, DCE and Berzak announced their intentions to move for a directed verdict. The court stated that it would entertain written submissions. Plaintiff objected, arguing that the end of Smith's testimony was still extant, and that it still had remaining witnesses to call, including an additional expert for whom plaintiff had produced a CPLR 3101(d) exchange. Further, plaintiff had not yet completed his examination of Berzak's witness, Stuart Gold.  

 In support of its motion, DCE argued that plaintiff had not made out a prima facie case because Smith, plaintiff's own expert, had testified unequivocally that DCE was not liable. That was because the only connection between DCE and the underpinning was a Statement of Technical Responsibility (TR-1) executed by DCE and filed by it with the Department of Buildings (DOB). The TR-1 represented that DCE would perform controlled inspections of the underpinning. However, DCE pointed to testimony from Smith that in such a scenario the party can only have liability if it actually filed underpinning plans, which DCE indisputably did not. DCE further argued that, in any event, and as acknowledged by Smith, it did not receive 72-hour written notice of commencement of the underpinning work. It also noted that, pursuant to former Administrative Code of the City of New York section 27-195, a party responsible for performing controlled inspections must be given such notice before its obligation is triggered.  

 In support of its motion for a directed verdict, Berzak argued that the court had already found that Smith was not qualified to opine about whether, by the professional standards in place in 2002, when the underpinning work had been performed, its plan was appropriate. That was because, by Smith's own admission, he was working in Massachusetts at the time and was not familiar with the particulars of New York engineering practice. For that reason, Berzak asserted, plaintiff could not make out a prima facie case against it. Berzak further argued that the underpinning was performed according to a plan it had designed for preliminary purposes only, and which it had not signed or sealed, much less obtained DOB approval for. Accordingly, it had no expectation that JMB would instruct its underpinning contractor to work off the plan. To the extent plaintiff was also seeking to hold Berzak liable based on a TR-1 it signed indicating that it would perform controlled supervision of the underpinning, it noted that it signed its TR-1 after the damage to plaintiff's building had already occurred. Similar to DCE, it also asserted that it did not receive the requisite 72-hour notice.  

 In opposition to the motions of both DCE and Berzak, plaintiff argued that they were premature. This was because, as noted above, plaintiff's counsel had not yet completed the examination of Smith, nor had he been given an opportunity to call a second structural engineering expert. Further, plaintiff, relying on an earlier decision by Supreme Court that found an issue of fact whether DCE had responsibility for the underpinning by virtue of the TR-1, argued that the trial court was required to allow that issue to reach the jury. JMB opposed the DCE and Berzak motions as well. JMB also argued that the motions were premature, since it had not yet had an opportunity to question Gold, Berzak's witness, nor had it had an opportunity to call its own expert witness to prove DCE's and Berzak's liability. JMB also pointed to trial testimony that Gold had already given, as well as deposition testimony from an engineer employed by Berzak, which it argued demonstrated that there were factual issues regarding Berzak's liability that should have gone to the jury. JMB attached an affidavit from its designated expert explaining how he would have testified concerning Berzak's behavior, which he opined departed from the appropriate standard of care. 

 In separate orders, the court granted both directed verdict motions. With respect to DCE, the court stated that "[p]laintiff points to no exhibits, in evidence already, or upcoming, that demonstrate [DCE's] involvement with underpinning."  It disregarded the earlier ruling that there was an issue of fact concerning the TR-1, finding that it became irrelevant once the trial commenced. With respect to Berzak, the court pointed to Smith's admitted lack of familiarity with the standards for underpinning design in New York City in 2002, such that plaintiff could not make out a prima facie case. The court further noted that JMB's expert exchange, furnished three years earlier, addressed plaintiff's behavior only, and not Berzak's. Therefore, the court held, it would be prejudicial to Berzak to permit JMB to supplement the disclosure at such a late date. 

 On the same day the court issued its order directing a verdict in favor of Berzak, it orally declared a mistrial, based on the inability of several jurors to continue. Also on that day, JMB moved for a directed verdict dismissing the gross negligence and punitive damages claims asserted against it by plaintiff. It argued that the evidence showed, at best, ordinary negligence. In opposition, plaintiff argued, again, that the motion was premature because it had not rested its case. It also posited that law of the case controlled, citing an earlier order denying summary judgment on the same issue. On the merits, plaintiff asserted that JMB was grossly negligent in the way it supervised the excavation work, insofar as it consciously ignored signs that without proper underpinning plaintiff was likely to suffer damages. The court granted JMB's motion, noting that plaintiff's expert disclosure did not mention the word "gross" in reference to negligence, and that plaintiff did not make an offer of proof on the issue of recklessness.  

 Shortly after JMB made its motion, Berzak moved to dismiss all cross claims against it, including a contractual indemnification claim based on its contract with JMB, which provided: 

"[Berzak] assumes entire responsibility and liability for any and all claims and/or damages of any nature or character whatsoever for which [JMB] shall be liable under the Contract Documents or, by operation of law, with respect to the scope of the work covered by this Consulting Agreement and agrees to indemnify and save [JMB] harmless from and against all claims, demands, personal injuries, including death, to any and all persons, whether employees of [JMB] or others, or otherwise, caused or occasioned thereby, resulting therefrom, arising out of or therefrom, or occurring in connection therewith to the same extent and obligation to which [JMB] has assumed towards Owner under the Contract Documents, or as imposed by law, limited to the scope of the subject matter of this Consulting Agreement." 

 

The basis for dismissing the common-law indemnification, contribution, and breach of contract claims was the same as Berzak's argument for dismissal of plaintiff's claims, which was that no expert competently testified that it was negligent in the way it designed the underpinning system. As for the contractual indemnification issue, Berzak asserted that it executed the contract with JMB two months after Berzak initially performed underpinning design work pursuant to a separate oral contract with the excavation subcontractor, and that there was no evidence that the parties intended for the indemnification clause to apply retroactively. Berzak further claimed that the specific indemnification language in the contract was violative of General Obligations Law section 5-322.1, since it held JMB harmless for its own negligent conduct. In opposition, JMB argued that the motion was procedurally defective since it was made after the mistrial had already been declared. It further repeated its arguments made in opposition to Berzak's own directed verdict motion against plaintiff's claims  - namely,  that the trial evidence, and its proposed expert testimony, established Berzak's negligence. Finally, JMB disputed that the indemnification language required it to be indemnified for its own negligence. 

 The court granted Berzak's motion and dismissed JMB's cross claims. The court rejected JMB's contention that the motion was made too late, noting that it was "made with court permission, and after the conclusion of the Plaintiff's liability evidence, so in essence it is addressed to the Plaintiff's prima facie case."  The court rejected JMB's arguments as to the merits for the same reason it espoused in granting Berzak's motion against plaintiff. It did not specifically address the issues concerning the indemnification clause. 

 On appeal, plaintiff argues, as it did below, that, the merits aside, the motions by DCE, Berzak and JMB for directed verdicts were premature. CPLR 4401 provides, in pertinent part: 

 "Any party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue, or at any time on the basis of admissions." 

 

 In interpreting this provision, this Court has held that the requirement that a party opposing a directed verdict motion must have closed its presentation of evidence "must be strictly enforced" (Griffin v Clinton Green S., LLC, 98 AD3d 41, 46 [1st Dept 2012]). Further, we have held that "the grant of a dismissal [pursuant to CPLR 4401] prior to the close of the opposing party's case will be reversed as premature, even if the ultimate success of the opposing party in the action is improbable" (id., quoting Cass v Broome County Coop. Ins. Co., 94 AD2d 822, 823 [3d Dept 1983] [alteration in original]). This Court in Griffin emphasized the importance of each party being "afford[ed] . . . a day in court" (98 AD3d at 46 [internal quotation marks omitted]).  

 In arguing that its motion was ripe, Berzak points to the plethora of evidence plaintiff was permitted to put in over the course of over two months, arguing that plaintiff effectively had its day in court. Berzak asserts that plaintiff does not explain precisely what it anticipated its yet-to-be-called witnesses would have testified to, had the trial proceeded. Further, it claims that, given the already voluminous amount of testimony and evidence before the court, coupled with the court's decision to find Smith unqualified to opine on much of the work performed by Berzak, those witnesses would not have made a material difference to the court's ability to direct a verdict dismissing plaintiff's claims against it. These arguments must be rejected. Griffin explicitly instructs us, in considering a directed verdict motion before the close of evidence, to disregard the ultimate chances of the opposing party's success, and to consider only whether that party had rested its case. Here, plaintiff never closed. Accordingly, it was error for the court to entertain the motion. Further, plaintiff never expressly waived its right to complete its examination of Berzak's witness, nor did plaintiff waive examination of any of the other witnesses on its list. In addition, to the extent Smith was found to be unqualified to render parts of his opinion, Berzak has not sufficiently established that plaintiff's entire theory of liability against it is such that an expert's testimony was necessary to prove all of its elements. 

 Berzak essentially asks us to endorse a system whereby a party can make a directed verdict motion at any time during trial, so long as the party opposing the motion has put in some unspecified quantum of evidence that, though it may not have been everything the opposing party intended to put in, was sufficient for the trial court to determine that there were no issues of fact and it could decide for the movant as a matter of law.  We decline to do so. First, such a system would contradict Griffin, which, again, stresses the actual close of evidence, not its "effective" close. Moreover, to require a trial court to determine whether cutting off the opposing party's presentation of evidence would or would not prejudice it would place an unnecessary burden on the court, which would be put to the unenviable procedural burden of having to analyze the evidence already presented by the opposing party, as well as the evidence not yet presented.  

 JMB argues that its motion was not premature because plaintiff had already closed its presentation of evidence related to gross negligence, the only issue addressed in JMB's motion. However, nothing in the record indicates that plaintiff formally closed its presentation of evidence with respect to any aspect of the case, including gross negligence. Further, even if such a formal declaration is unnecessary, the ultimate determination of whether JMB was grossly negligent was to be drawn from a holistic view of all of plaintiff's evidence, and JMB offers no indication that plaintiff's remaining evidence would not further elucidate the extent of JMB's disregard for plaintiff's property (contrast Diamond v Bank of N.Y., 199 AD2d 65 [1st Dept 1993] ["Plaintiff's motion for a directed verdict was timely since (the opposing party) had closed its evidence with respect to the issue for which judgment was sought"] [emphasis added]). We note that, contrary to JMB's argument, punitive damages would be available to plaintiff in connection with any finding by the jury of gross negligence. This Court made that clear in deciding an earlier appeal in this action, holding that "[a]s the faulty underpinning of a multistory building implicates public safety, if gross negligence is proved, punitive damages may properly be awarded" (11 Essex St. Corp. v Tower Ins. Co. of N.Y., 81 AD3d 516, 517[1st Dept 2011]).  

 With respect to DCE, we find that the directed verdict motion was appropriately granted. CPLR 4401 expressly authorizes a directed verdict "at any time on the basis of admissions," and Smith admitted that DCE was free from liability. Under cross-examination by DCE's counsel, Smith acknowledged that the only connection between DCE and any underpinning on the site was its execution of the TR-1 that, among other responsibilities, ostensibly obligated it to perform controlled inspections of any underpinning performed in connection with the project. Smith further acknowledged that, because DCE's plans did not include underpinning, and because, even if DCE had a "technical" responsibility based on the TR-1, it was absolved of that obligation because it did not receive the 72-hour notice required by Administrative Code section 27-195, he "[didn't] see any issues with" DCE's performance. Notably, on redirect, plaintiff's counsel made no effort whatsoever to rehabilitate Smith with respect to his admission about DCE's liability.  

 It is worth noting that Smith made no similar admission as to Berzak's liability. While Smith also acknowledged that Berzak did not receive 72-hour notice of the underpinning, plaintiff's theory of liability against Berzak runs much deeper than its theory against DCE. Not only does plaintiff allege that Berzak failed to perform controlled inspections of the underpinning, it also asserts that Berzak failed to properly inspect the premises before designing an underpinning plan, and failed to communicate to JMB that its initial plan was preliminary only and not intended to form the basis for the actual implementation of an underpinning system. Smith did not absolve Berzak of liability for these claims as he did for DCE. 

 Because JMB's cross claims against Berzak for breach of contract, common-law indemnification and contribution depended on the evidence presented by plaintiff in its direct claim against Berzak, we must deny Berzak's motion for a directed verdict dismissing those cross claims, since, as discussed above, plaintiff's claim against Berzak should not have been dismissed. However, it was appropriate for the court to direct a verdict in Berzak's favor against JMB with respect to the contractual indemnification claim. The only salient evidence supporting that claim, the contract between Berzak and JMB, was in evidence when Berzak made its motion, so the issue was ripe for adjudication as a matter of law.  

 Further, we find, as a matter of law, that Berzak was entitled to dismissal of the cross claim. Under General Obligations Law  5-322.1, an indemnitee may not require an indemnitor to indemnify it against its own negligence. The Court of Appeals has held that a contract that purports to indemnify the indemnitee against its own negligence is not merely void as to the portion requiring indemnification of the indemnitee's negligence, but that the entire indemnification agreement is void, and the promisee may not collect under any part of the agreement (see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co., 89 NY2d 786 [1997]). 

 Here, the indemnification clause broadly imposes an indemnification obligation on Berzak, without limitation in terms of JMB's negligence. It does not include limiting phrases that indicate partial indemnification (cf. Dutton v Pankow Bldrs., 296 AD2d 321, 322 [1st Dept 2002] ["to the fullest extent permitted by applicable law," and "exclud(ing) only liability created by the (general contractors's) [sic] sole and exclusive negligence"] [alteration in original], lv denied 99 NY2d 511 [2003]). Indeed, JMB does not argue that there are such limiting phrases. Rather, it argues only that "the Agreement contains no requirement that Berzak Gold indemnify JMB against JMB's own acts of negligence."  However, the plain language clearly contemplates such full indemnification. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Whitfield<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Whitfield (Robert)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Whitfield (Robert), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06710</MDSlipOpNo> 

<MDIndexTitle>People v Whitfield<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Whitfield (Robert)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Robert Whitfield, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York, 

 Respondent, 

 

 -against- 

 

 Robert Whitfield, 

 Defendant-Appellant. 

 _________________________ 

 

Rosemary Herbert, Office of the Appellate Defender, New York (Matthew A. Wasserman of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (Diane N. Princ of counsel), for respondent. 

 _________________________ 

 

 Judgment, Supreme Court, New York County (Bonnie G. Wittner, J.), rendered September 17, 2013, convicting defendant, after a jury trial, of conspiracy in the second and fourth degrees, criminal possession of a controlled substance in the first degree, bribe receiving in the first and second degrees, and official misconduct, and sentencing him to concurrent terms of 3 to 9 years, 1  to 4 years, 8 years, 3 to 9 years, 2 to 6 years, and 1 year, respectively, unanimously affirmed. 

 Defendant did not preserve by specific objections his current claims regarding the legal sufficiency of the evidence supporting his controlled substance conviction, and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits. We also find that the verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). The evidence showed that defendant, then a correction officer at Rikers Island, agreed with an inmate to procure that inmate's release in exchange for three kilograms of cocaine, that defendant coordinated the exchange with the inmate and his "cousin" (actually an undercover officer), passed on to the "cousin" the number to reach a codefendant, who would pick up the drugs, and ultimately did so while defendant remained in the vicinity of the exchange. The evidence thus sufficiently established that defendant exercised dominion and control over the codefendant for purposes of acquiring the drugs, and that defendant therefore had constructive possession of the drugs, even if he did not know the precise moment when the undercover officer handed the codefendant the drugs (see People v Carvajal, 6 NY3d 305, 314 [2005]; People v Fuente, 79 NY2d 561, 574-75 [1992]). Moreover, the evidence sufficed to establish defendant's liability for the codefendant's possession of cocaine under an acting in concert theory (see Penal Law  20.00; People v King, 61 AD3d 560 [1st Dept], lv denied 13 NY3d 746 [2009]; People v Moreno, 58 AD3d 516 [1st Dept], lv denied 12 NY3d 819 [2009]). 

 The court appropriately responded to a note from the deliberating jury asking whether the evidence must show that the defendant was "aware the drugs were transferred."  The court noted the previously discussed principles, quoted correctly from this Court's opinion in Carvajal (14 AD3d 165, 170 [1st Dept 2004], affd 6 NY3d 305 [2005]), and meaningfully responded to the jury's note (see People v Almodovar, 62 NY2d 126, 131 [1984]). Moreover, the main charge and other supplemental instructions on the same issue fully conveyed the correct legal principles (see People v Simmons, 15 NY3d 728, 729 [2010]). 

 Evidence of defendant's unsuccessful efforts to make the same deal with three inmates other than those who testified should have been excluded because this evidence was not, under the facts of the case, inextricably interwoven with the charged crimes, and it had little probative value. However, any potential for prejudice was minimized by the court's limiting instructions, and any error was harmless given the overwhelming evidence of defendant's guilt (see People v Crimmins, 36 NY2d 230 [1975]). 

 The other trial rulings challenged by defendant on appeal were provident exercises of discretion. To the extent that defendant is raising constitutional claims regarding those rulings, those claims are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Wells Fargo Bank N.A. v Javier<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Javier, Wells Fargo Bank N.A. v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06711</MDSlipOpNo> 

<MDIndexTitle>Wells Fargo Bank N.A. v Javier<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Wells Fargo Bank N.A. v Javier</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>Wells Fargo Bank N.A., Respondent Appellant, v Ricardo Javier, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 

 Wells Fargo Bank N.A., 

 Plaintiff-Respondent, 

 

 -against- 

 

 Ricardo Javier, 

 Defendant-Appellant, 

 

 New York State Department of 

 Finance, et al., 

 Defendants. 

 _________________________ 

 

Petroff Amshen LLP, Brooklyn (Christopher Villanti of counsel), for appellant. 

 

Reed Smith LLP, New York (Andrew Messite of counsel), for respondent. 

 _________________________ 

 

 Judgment of foreclosure and sale, Supreme Court, Bronx County (Ben R. Barbato, J.), entered on or about March 13, 2017, unanimously affirmed, without costs. Appeal from order, same court (Norma Ruiz, J.), entered March 31, 2016, which, upon renewal, denied defendant Ricardo Javier's motion to extend the time to answer, unanimously dismissed, without costs, as subsumed in the appeal from the judgment. 

 Defendant failed to show both a reasonable excuse for his default and a potentially meritorious defense to this foreclosure action (see US Bank N.A. v Brown, 147 AD3d 428, 429 [1st Dept 2017]). His assertion that he had been "led to believe" (by parties unnamed) that he did not need to answer the complaint because he had submitted a loan modification application is not a reasonable excuse, in view of the clear warning contained in the summons served in this action that failure to respond could result in a default judgment and loss of his home (see id.). Given his failure to proffer a reasonable excuse for the default, we need not determine whether defendant demonstrated a potentially meritorious defense to the action (see id. at 429-430). 

 The referee's failure to give notice of the proceedings (see CPLR 4313) to ascertain the amount due on the mortgage does not require reversal of the judgment of foreclosure and sale. Both parties submitted evidence to the court   the ultimate arbiter of the issue   in their motions to confirm or vacate the referee's report, and the court correctly found that defendant's evidence failed to rebut plaintiff's evidence (see Union Chelsea Natl. Bank v Rumican 190 Corp., 257 AD2d 463 [1st Dept 1999], lv dismissed in part, denied in part 93 NY2d 989 [1999]; Adelman v Fremd, 234 AD2d 488 [2d Dept 1996]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Matter of Ryan Perrie M. v Caden M.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Ryan Perrie M., Matter of, v Caden M.<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Caden M., Matter of Ryan Perrie M. v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06712</MDSlipOpNo> 

<MDIndexTitle>Matter of Ryan Perrie M. v Caden M.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Ryan Perrie M., Matter of, v Caden M.</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>In the Matter of Ryan Perrie M., Respondent Appellant, v Caden M., Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 In re Ryan Perrie M., 

 Petitioner-Respondent, 

 

 -against- 

 

 Caden M., 

 Respondent-Appellant. 

 _________________________ 

 

Andrew J. Baer, New York, for appellant. 

 

Tennille M. Tatum-Evans, New York, for respondent. 

 _________________________ 

 

 Order of protection, Family Court, Bronx County (Karen M.C. Cortes, Referee), entered on or about June 15, 2016, which, upon a fact-finding determination that respondent committed the family offenses of assault in the third degree, attempted assault, and harassment in the second degree, directed her to refrain from threatening or committing a criminal offense against petitioner for a period of two years, unanimously modified, on the law, to vacate the finding of assault in the third degree, and otherwise affirmed, without costs. 

 The Referee erred in determining that respondent's actions constituted the family offense of assault in the third degree because the facts necessary to support such a finding were not alleged in the petition (see Matter of Sasha R. v Alberto A., 127 AD3d 567 [1st Dept 2015]). Contrary to respondent's contention, however, the petition sufficiently alleged facts that, if proven, would constitute the family offenses of attempted assault (Family Ct Act  812[1]) and harassment in the second degree (Penal Law  240.26; see Matter of Brown-Winfield v Bailey, 143 AD3d 707, 708 [2d Dept 2016]).  

 A fair preponderance of the evidence supports the finding that on December 15, 2015, respondent's actions constituted the family offense of harassment in the second degree because it cannot be seriously argued that her statements that she was going to harm petitioner and her actions in following petitioner down the street and attempting to instigate a fight with her would not annoy or alarm petitioner or had a legitimate purpose. Respondent's intent to harass, annoy or alarm petitioner could be inferred from her conduct, including her threats to assault petitioner and her continued threatening and menacing manner even after others intervened (see McGuffog v Ginsberg, 266 AD2d 136 [1st Dept 1999).  

 There exists no basis upon which to disturb the Referee's credibility determinations (see Matter of Chigusa Hosono D. v Jason George D., 137 AD3d 631, 632 [1st Dept 2016]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Matter of Kriloff v New York City Dept. of Educ.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Kriloff, Matter of, v New York City Dept. of Educ.<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>New York City Dept. of Educ., Matter of Kriloff v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06713</MDSlipOpNo> 

<MDIndexTitle>Matter of Kriloff v New York City Dept. of Educ.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Kriloff, Matter of, v New York City Dept. of Educ.</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>In the Matter of Stephanie Kriloff, Respondent Appellant, v New York City Department of Education, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 In re Stephanie Kriloff, 

 Petitioner-Respondent, 

 

 -against- 

 

 New York City Department of Education, 

 Respondent-Appellant. 

 _________________________ 

 

Zachary W. Carter, Corporation Counsel, New York (Antonella Karlin of counsel), for appellant. 

 

Leeds Brown Law, P.C., Carle Place (Rick Ostrove of counsel), for respondent. 

 _________________________ 

 

 Order and judgment (one paper), Supreme Court, New York County (Charles E. Ramos, J.), entered August 17, 2016, annulling respondent's determination, dated March 25, 2015, which discontinued petitioner's probationary employment as a teacher, unanimously reversed, on the law, without costs, the determination reinstated, and the proceeding brought pursuant to CPLR article 78 dismissed. 

 Petitioner failed to show that respondent's discontinuation of her probationary employment was done in bad faith, for a constitutionally impermissible purpose, or in violation of the law (see Matter of Mendez v New York City Dept. of Educ., 28 NY3d 993 [2016]). Petitioner contends that respondent erred in concluding that her actions   taking hold of the arm of a non-verbal, special-needs student as he lay on the floor writhing and physically dragging him approximately eight feet across the hall to the classroom he had exited without permission   constituted prohibited corporal punishment. This contention is insufficient to establish that respondent reached its conclusion in bad faith or for an impermissible reason (see id.; Matter of Reiser v New York City Dept. of Educ., 133 AD3d 465 [1st Dept 2015]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Chatham Towers, Inc. v Castle Restoration & Constr., Inc.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Castle Restoration & Constr., Inc., Chatham Towers, Inc. v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06714</MDSlipOpNo> 

<MDIndexTitle>Chatham Towers, Inc. v Castle Restoration & Constr., Inc.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Chatham Towers, Inc. v Castle Restoration & Constr., Inc.</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>Chatham Towers, Inc., Respondent Appellant, v Castle Restoration & Construction, Inc., Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 Chatham Towers, Inc., 

 Plaintiff-Appellant, 

 

 -against- 

 

 Castle Restoration & Construction, 

 Inc., et al., 

 Defendants-Respondents, 

 

 XYZ Corp., et al., 

 Defendants. 

 _________________________ 

 

Stagg, Terenzi, Confusione & Wabnik, LLP, Garden City (Ronald M. Terenzi of counsel), for appellant. 

 

Havkins Rosenfeld Ritzert & Varriale, LLP, Mineola (Tina Yanover of counsel), for Castle Restoration & Construction, Inc., respondent. 

 

Lavin, O'Neil, Cedrone & DiSipio, New York (Michael McKeon of counsel), for Kemper System America, Inc., respondent. 

 _________________________ 

 

 Order, Supreme Court, New York County (Cynthia S. Kern, J.), entered March 21, 2017, which, inter alia, denied plaintiff's motion for summary judgment on liability and granted defendant Kemper System America, Inc.'s motion for summary judgment dismissing the complaint as against it, unanimously affirmed, without costs. 

 The motion court correctly rejected plaintiff's argument that defendants Castle Restoration & Construction, Inc., and Kemper System America, Inc. are liable for breach of contract and breach of warranty, respectively, on a theory of res ipsa loquitur. Res ipsa loquitur "permits the inference of negligence to be drawn from the circumstance of the occurrence" (Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226 [1986]). "[W]ithout a cause of action for negligence there is no viable cause of action to which to apply the doctrine" (Ianotta v Tishman Speyer Props, Inc., 46 AD3d 297, 299 [1st Dept 2007]). 

 Even if the doctrine of res ipsa loquitur could be applied to a breach of contract or breach of warranty case, plaintiff failed to present evidence establishing the elements of the doctrine in this case (see Dermatossian, 67 NY2d at 226). Plaintiff contends that there is no reasonable explanation for water to leak from the concrete plaza deck into the underground garage below it other than Castle's poor workmanship in installing the waterproofing system, which was manufactured by Kemper, or defects in the waterproofing system. However, it submitted no evidence that the waterproofing system or the installation of the system was the instrumentality that caused the leaks or that subsequent work on steps leading from the plaza deck did not affect the plaza deck or any space above the garage (see id.). 

 Kemper established that it did not breach its warranty. The warranty covers the waterproofing system against leaks and seepage found by Kemper to have been caused by defects in the products it supplied or improper installation. It requires plaintiff to grant Kemper access to the system for inspection and testing, including, as plaintiff acknowledges, bearing the cost of removing the plaza deck (the overburden). Because plaintiff has not had the overburden removed, Kemper has no access to the waterproofing system and cannot make a determination whether the leaking was caused by a covered defect. Plaintiff contends that this does not relieve Kemper of its obligations under the warranty, because Kemper could have the overburden removed and then seek reimbursement. However, nothing in the warranty obligates Kemper to incur any expense in connection with the removal of the overburden. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Jeudy<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Jeudy (Alexandra)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Jeudy (Alexandra), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06715</MDSlipOpNo> 

<MDIndexTitle>People v Jeudy<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Jeudy (Alexandra)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Alexandra Jeudy, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York, 

 Respondent, 

 

 -against- 

 

 Alexandra Jeudy, 

 Defendant-Appellant. 

 _________________________ 

 

Seymour W. James, Jr., The Legal Aid Society, New York (William B. Carney of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (Alan Gadlin of counsel), for respondent. 

 _________________________ 

 

 Judgment, Supreme Court, New York County (Michael J. Obus, J.), rendered June 12, 2014, convicting defendant, upon her plea of guilty, of petit larceny, and sentencing her to time served, unanimously affirmed. 

 Defendant's challenges to her initial plea to a felony are unpreserved (see People v Conceicao, 26 NY3d 375, 382 [2015]), and we decline to review them in the interest of justice. As an alternative holding, we find that the record as a whole demonstrates that the initial plea allocution was sufficient and that the plea was knowing, intelligent, and voluntary (see People v Tyrell, 22 NY3d 359, 365 [2013]).  

 After defendant complied with the conditions of her felony plea, she was permitted to replead to a misdemeanor. Although her challenge to the second plea proceeding is exempt from preservation requirements because sentence was immediately imposed, that challenge is unavailing because it was permissible for the court to incorporate the initial plea allocution by reference (see People v Muir, 134 AD3d 641 [1st Dept 2015], lv denied 26 NY3d 1147 [2016]). 

 In any event, the only relief defendant requests is dismissal of the indictment rather than vacatur of the plea, and she expressly requests this Court to affirm the conviction if it does not grant a dismissal. Since we do not find that dismissal would be appropriate, we affirm on this basis as well (see e.g. People v Teron, 139 AD3d 450 [1st Dept 2016]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Matter of Maria-Irene D.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Maria-Irene D., Matter of<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06716</MDSlipOpNo> 

<MDIndexTitle>Matter of Maria-Irene D.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Maria-Irene D., Matter of</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>In the Matter of Maria-Irene D., Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 

 In re Maria-Irene D., 

 - - - - - 

 Carlos A., 

 Petitioner-Appellant, 

 

 Marco D., 

 Appellant, 

 

 -against- 

 

 Han Ming T., 

 Respondent-Respondent. 

 _________________________ 

 

Magovern & Sclafani, Mineola (Frederick J. Magovern of counsel), for appellants. 

 

Rumbold & Seidelman, LLP, Bronxville (Nina E. Rumbold of counsel), for respondent. 

 _________________________ 

 

 Order, Family Court, New York County (Stewart H. Weinstein, J.), entered on or about March 16, 2017, which, to the extent appealed from as limited by the briefs, upon effectively granting reargument, adhered to its prior order, entered on or about December 21, 2016, which had granted respondent's motion to vacate petitioner's adoption of the subject child, unanimously affirmed, without costs. Appeal from order entered on or about December 21, 2016, unanimously dismissed, without costs, as superseded by the appeal from the order granting reargument. 

 Appellant Marco D. and respondent Han Ming T. (Ming), both British citizens, entered a civil union in the United Kingdom (UK) in 2008, which they converted into a legal marriage in 2015, effective as of the date of their civil union. In 2013, the couple jointly executed an egg donor and surrogacy agreement with the intention of becoming parents. Both contributed sperm, and ultimately the embryo fertilized by Marco's sperm was transferred to the surrogate. The child, named after both Marco's and Ming's mothers, was born in September 2014. The couple retained counsel, and commenced a proceeding in Missouri to terminate the egg donor and surrogate's parental rights to the child. In October 2014, the Missouri court awarded Marco, as the genetic father, "sole and exclusive custody" of the child. Marco, Ming, and the child returned to Florida, where they lived as a family until October 2015, when Ming returned to the UK to seek employment. 

 At some point in or after 2013, Marco entered a relationship with petitioner Carlos A., and they moved to New York with the child after Ming went to the UK. In January 2016, Carlos commenced a petition in New York to adopt the child. In the adoption papers, petitioner disclosed that Marco and Ming were married in 2008, but alleged that they had not lived together continuously since 2012 and that Carlos and Marco had been caring for the child since her birth. A home study report stated that Marco and Ming legally separated in 2013 and had no children together. Ming's role in the surrogacy process was not disclosed to Family Court, nor was the Florida divorce action commenced by Ming in March 2016 in which he sought joint custody of the child. 

 Family Court granted the adoption petition in May 2016. After Ming learned of the adoption, he moved to vacate it, on the ground that relevant facts had not been disclosed to the court and that he was entitled to notice of the adoption and an opportunity to be heard since he had parental rights. Family Court granted Ming's motion, and vacated the adoption pursuant to Domestic Relations Law  114(3), finding that Carlos and Marco (together, appellants) had made material misrepresentations to the court that provided sufficient cause to vacate, and that Ming was entitled to notice of the adoption proceeding. The court left open the possibility that Carlos could pursue adoption of the child, if appropriate, after resolution of the divorce proceedings. Upon Carlos's motion for reargument, the court adhered to its prior determination. 

 Family Court providently exercised its discretion in vacating the adoption. It is undisputed that Ming and Marco's marriage in the UK was effective as of August 2008. New York courts as a matter of comity will recognize such out-of-state marriages (see e.g. Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289, 292 [1980]). The child was born in 2014, as the result of jointly executed surrogacy agreements, at a time when the couple was considered legally married, thus giving rise to the presumption that the child is the legitimate child of both Marco and Ming (see Domestic Relations Law  24; Matter of Fay, 44 NY2d 137 [1978], appeal dismissed 439 US 1059 [1979]). After the child was born, Marco, Ming and the child lived together as a family, and the couple took affirmative steps in the UK to establish Ming's parental rights in accordance with UK law. Under these circumstances, the Missouri judgment in 2014 awarding Marco sole and exclusive custody of the child, as opposed to the egg donor and surrogate, was insufficient to rebut the presumption of legitimacy. 

 The prevailing law at the time the adoption petition was granted does not compel a different result. The case law relied upon by appellants is distinguishable because, unlike the parties in those cases, Marco and Ming were deemed legally married when they embarked on the surrogacy process to have a child together (see Debra H. v Janice R., 14 NY3d 576 [2010], cert denied 562 US 1136 [2011]). Accordingly, the child was born in wedlock, and Ming was entitled to notice of the adoption proceeding (see Domestic Relations Law  111[1][b]). Under the Court of Appeals' most recent decision concerning parental standing (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1 [2016]), Ming's claim to have standing as a parent is even stronger. 

 Petitioner's failure to disclose the Florida divorce action, in which the child was named as a child of the marriage and Ming sought joint custody, provided another ground to vacate the adoption (see Domestic Relations Law  114[3]). The adoption petition required petitioner to give a sworn statement that the child to be adopted was not the subject of any proceeding affecting his or her custody or status. Even though petitioner was aware of the Florida divorce action before finalization of the adoption, he failed to disclose the action to the court, instead averring in a supplemental affidavit that there had been no change in circumstances "whatsoever" since the filing of the adoption petition. 

 We have considered appellants' arguments, including that an attorney for the child should have been appointed (see Family Court Act  249), and find them unavailing. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Decena<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Decena (Ruben)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Decena (Ruben), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06717</MDSlipOpNo> 

<MDIndexTitle>People v Decena<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Decena (Ruben)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Ruben Decena, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York, 

 Respondent, 

 

 -against- 

 

 Ruben Decena, 

 Defendant-Appellant. 

 _________________________ 

 

Seymour W. James, Jr., The Legal Aid Society, New York (Heidi Bota of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (John T. Hughes of counsel), for respondent. 

 _________________________ 

 

 An appeal having been taken to this Court by the above-named appellant from a judgment of the Supreme Court, New York County (Charles Solomon, J.), rendered December 10, 2013, 

 

 Said appeal having been argued by counsel for the respective parties, due deliberation having been had thereon, and finding the sentence not excessive, 

 

 It is unanimously ordered that the judgment so appealed from be and the same is hereby affirmed. 

 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

Counsel for appellant is referred to 

 606.5, Rules of the Appellate 

Division, First Department. 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Russell v Dewan<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Dewan, Russell v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06718</MDSlipOpNo> 

<MDIndexTitle>Russell v Dewan<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Russell v Dewan</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>Rashaad T. Russell, Respondent Appellant, v Alavddin Dewan, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 Rashaad T. Russell, 

 Plaintiff-Appellant, 

 

 -against- 

 

 Alavddin Dewan, et al., 

 Defendants-Respondents. 

 _________________________ 

 

Edelstein & Grossman, New York (Jonathan I. Edelstein of counsel), for appellant. 

 

Marjorie E. Bornes, Brooklyn, for respondents. 

 _________________________ 

 

 Order, Supreme Court, Bronx County (Doris Gonzalez, J.), entered on or about November 14, 2016, which denied plaintiff's motion for leave to renew defendants' motion for summary judgment dismissing the complaint based on the serious injury threshold of Insurance Law  5102(d), unanimously affirmed, without costs. 

 Plaintiff's motion for leave to renew defendants' motion for summary judgment contains none of the medical evidence submitted on the prior motion and is therefore insufficient to permit a determination whether the prior motion should be denied upon renewal (see CPLR 2214[c]; 2221[e]). Moreover, the motion does not contain reasonable justification for plaintiff's failure to submit affirmed medical reports in opposition to the prior motion (see CPLR 2221[e][3]) even after being granted multiple extensions of time to oppose (see Amtrust-NP SFR Venture, LLC v Vazquez, 140 AD3d 541 [1st Dept 2016], lv dismissed 28 NY3d 1102 [2016]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Matter of Crana Elec., Inc. v Battery Park City Auth.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Crana Elec., Inc., Matter of, v Battery Park City Auth.<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Battery Park City Auth., Matter of Crana Elec., Inc. v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06719</MDSlipOpNo> 

<MDIndexTitle>Matter of Crana Elec., Inc. v Battery Park City Auth.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Crana Elec., Inc., Matter of, v Battery Park City Auth.</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>In the Matter of Crana Electric, Inc., Respondent Appellant, v Battery Park City Authority, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 In re Crana Electric, Inc., 

 Petitioner/Plaintiff-Appellant, 

 

 -against- 

 

 Battery Park City Authority doing business 

 as Hugh L. Carey Battery Park City Authority, 

 et al., 

 Respondents/Defendants-Respondents. 

 _________________________ 

 

Farrell Fritz, P.C., Uniondale (Jason S. Samuels of counsel), for appellant. 

 

Holland & Knight LLP, New York (Timothy B. Froessel of counsel), for respondents. 

 _________________________ 

 

 Order and judgment (one paper), Supreme Court, New York County (Michael D. Stallman, J.), entered May 11, 2016, which converted the action to a CPLR 7506(b) proceeding to compel respondent vice president of internal audit (the arbiter) to proceed promptly with a hearing, and directed the arbiter to issue a decision within 60 days after service of a copy of the order and judgment, unanimously affirmed, without costs. 

 The alleged vacancy in the position of vice president of internal audit did not vitiate the dispute resolution procedures set forth in the subject contract. The parties' overarching intent to arbitrate petitioner's claims is manifest in the broad language of the contract's dispute resolution provision, which defines the dispute resolution procedure as petitioner's "sole means for challenging any determination, order or other action of the Owner [respondent Battery Park City Authority] or otherwise asserting against Owner any claim of whatever nature arising under, or in any way relating to this Agreement" (see State of New York v Philip Morris Inc., 30 AD3d 26, 31 [1st Dept 2006], affd 8 NY3d 574 [2007]). Given the "dominant intention to arbitrate at all events," a vacancy in the arbiter position would not serve to frustrate that intention (see Matter of Marchant v Mead-Morrison Mfg. Co., 252 NY 284, 295 [1929], appeal dismissed 282 US 808 [1930]; CPLR 7504 ["Court appointment of arbitrator"]). 

 Nor did the alleged vacancy in the arbiter position relieve petitioner of its obligation to exhaust administrative remedies before commencing the instant proceeding (see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]; see CPLR 7504; 7506[b]). 

 Petitioner failed to show that resort to the contract's dispute resolution procedures would be futile. Petitioner's contention that the arbiter is biased because he is under the Authority's control is unavailing in view of the parties' agreement that an employee of the Authority will act as arbiter. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>Liberatore v Greuner<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>Greuner, Liberatore v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06720</MDSlipOpNo> 

<MDIndexTitle>Liberatore v Greuner<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>Liberatore v Greuner</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>Maria Angeles Liberatore, Respondent Appellant, v David Greuner, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 Maria Angeles Liberatore, 

 Plaintiff-Respondent, 

 

   -against- 

 

 David Greuner, M.D., 

 Defendant-Appellant. 

 _________________________ 

 

Kirschenbaum & Kirschenbaum, P.C., Garden City (Caroline P. Wallitt and Steven Sheinwald of counsel), for appellant. 

 

Fensterstock & Partners LLP, New York (Evan S. Fensterstock of counsel), for respondent. 

 _________________________ 

 

 Order, Supreme Court, New York County, (Alice Schlesinger, J.), entered February 23, 2017, which, inter alia, denied defendant's motion for summary judgment dismissing plaintiff's claim of fraud, unanimously affirmed, without costs. 

 Plaintiff has standing to bring this action, as her claims against defendant were abandoned by the trustee as unliquidated and remaining unadministered assets of plaintiff's bankruptcy estate (see In re Furlong, 660 F3d 81, 88 [1st Cir 2011]). The court also correctly found that plaintiff's claim of fraud is not duplicative of her medical malpractice claims, which were dismissed as untimely. Plaintiff's fraud claim alleges, not malpractice, but that defendant intentionally drugged her in furtherance of stealing money from her. Furthermore, the damages sought differ from those that would have been available in the malpractice action (see Simcuski v Saeli, 44 NY2d 442 [1978]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v McMillan<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v McMillan (Keith)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>McMillan (Keith), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06721</MDSlipOpNo> 

<MDIndexTitle>People v McMillan<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v McMillan (Keith)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Keith McMillan, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

4531 The People of the State of New York,     

 Respondent, 

 

 -against- 

 

 Keith McMillan, 

 Defendant-Appellant. 

 _________________________ 

 

Rosemary Herbert, Office of the Appellate Defender, New York (Joseph M. Nursey of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (Amanda Katherine Regan of counsel), for respondent. 

 _________________________ 

 

 Judgment, Supreme Court, New York County (Edward J. McLaughlin, J.), rendered April 16, 2014, convicting defendant, upon his plea of guilty, of tampering with physical evidence, and sentencing him, as a second felony offender, to a term of 1 to 3 years, unanimously affirmed. 

 The court properly denied defendant's suppression motion. There was probable cause for defendant's arrest about 30 minutes after an officer saw defendant make what appeared to be a drug sale. The observing officer provided a detailed clothing description of the seller, and also saw defendant on a live surveillance video, at which time he directed other officers to defendant's location, where defendant was immediately apprehended (see e.g. People v Coleman, 77 AD3d 591 [1st Dept 2010], lv denied 16 NY3d 829 [2011]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Mack<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Mack (Brian)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Mack (Brian), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06722</MDSlipOpNo> 

<MDIndexTitle>People v Mack<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Mack (Brian)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Brian Mack, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York, 

 Respondent, 

 

 -against- 

 

 Brian Mack, 

 Defendant-Appellant. 

 _________________________ 

 

Seymour W. James, Jr., The Legal Aid Society, New York (Heidi Bota of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (Andrew E. Seewald of counsel), for respondent. 

 _________________________ 

 

 An appeal having been taken to this Court by the above-named appellant from a judgment of the Supreme Court, New York County (Patricia Nunez, J.), rendered November 19, 2015, 

 

 Said appeal having been argued by counsel for the respective parties, due deliberation having been had thereon, and finding the sentence not excessive, 

 

 It is unanimously ordered that the judgment so appealed from be and the same is hereby affirmed. 

 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

Counsel for appellant is referred to 

 606.5, Rules of the Appellate 

Division, First Department. 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>CDR Crances S.A.S. v First Hotels & Resorts Invs., Inc.<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>First Hotels & Resorts Invs., Inc., CDR Crances S.A.S. v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06723</MDSlipOpNo> 

<MDIndexTitle>CDR Crances S.A.S. v First Hotels & Resorts Invs., Inc.<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>CDR Crances S.A.S. v First Hotels & Resorts Invs., Inc.</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>CDR Crances S.A.S., Respondent Appellant, v First Hotels & Resorts Investments, Inc., Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, JJ. 

 

 CDR Crances S.A.S., 

 Plaintiff-Respondent, 

 

 -against- 

 

 First Hotels & Resorts Investments, 

 Inc., also known as Les Premiers 

 Investissements Hoteliers & Villegiature, 

 Inc., 

 Defendant-Appellant. 

 _________________________ 

 

Stern Tannenbaum & Bell LLP, New York (David S. Tannenbaum of counsel), for appellant. 

 

Kellner Herlihy Getty & Friedman, LLP, New York (Douglas A. Kellner of counsel), for respondent. 

 _________________________ 

 

 Order, Supreme Court, New York County (Lawrence K. Marks, J.), entered on or about February 7, 2017, which denied defendant's motion for summary judgment dismissing the claims for fraudulent transfer, unjust enrichment, and attorneys' fees pursuant to Debtor and Creditor Law  276-a, unanimously modified, on the law, to grant the motion as to the unjust enrichment claims, and otherwise affirmed, without costs. 

 The motion court correctly found that the transfer into defendant's Union Planters bank account and the pre-January 7, 2004 transfer into its HSBC account did not constitute a new theory of liability. All along, plaintiff's theory of liability has been a fraudulent transfer from nonparty Whitebury Shipping Time Sharing, Ltd. to defendant; thus, the key is Whitebury's intent to hinder, delay, or defraud plaintiff or its predecessor (see Debtor and Creditor Law  276). Because it is difficult to prove actual intent, plaintiff is permitted to rely on badges of fraud (see Wall St. Assoc. v Brodsky, 257 AD2d 526, 529 [1st Dept 1999]). Most of these badges, such as the relationship between Whitebury and defendant, whether the transfers were in the ordinary course of business, whether defendant gave Whitebury any consideration, and whether Whitebury retained any control of the money it transferred to defendant, are within defendant's knowledge; defendant does not need discovery on these points. As for Whitebury's knowledge of plaintiff's (or its predecessor's) claim and Whitebury's inability to pay it, that factor is the same regardless of whether the fraudulent transfer is only the January 15, 2004 transfer mentioned in plaintiff's interrogatory responses or all three transfers into defendant's bank accounts. 

 The three transfers amount to $8.55 million; defendant only proved that it had repaid Whitebury $6 million. Therefore, defendant did not entirely disprove plaintiff's claim of a fraudulent transfer. 

 Because the court correctly declined to dismiss the fraudulent transfer claim, it also correctly declined to dismiss the claim for attorneys' fees under Debtor and Creditor Law  276-a. 

 However, the unjust enrichment claim should be dismissed, because there was no relationship between the parties that could have caused reliance or inducement on plaintiff's or its predecessor's part (see Georgia Malone & Co., Inc. v Rieder, 86 AD3d 406, 408 [1st Dept 2011], affd 19 NY3d 511 [2012]). Plaintiff's predecessor made a one-year loan to nonparty Euro-American Lodging Corporation (EALC) in 1990 and extended it in 1991. Defendant was not formed until 1999. 

 The motion court apparently allowed plaintiff to establish the requisite relationship via an alter ego theory. However, in 2011, plaintiff moved to amend its complaint to make it clear that it sought reverse piercing of defendant's corporate veil so that all of defendant's assets could be made available to satisfy plaintiff's judgments against various nonparties. The court (O. Peter Sherwood, J.) denied the motion, and we affirmed (CDR Crances S.A.S. v First Hotels & Resorts Invs., Inc., 101 AD3d 485 [1st Dept 2012]). Furthermore, we have twice rejected a connection between defendant's purchase of the condominium unit at issue in the instant action and plaintiff's predecessor's loan to EALC (see id. at 487; Matter of CDR Crances S.A.S. v First Hotels & Resorts Invs., Inc., 140 AD3d 558, 563 [1st Dept 2016]). 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Marte-Tejada<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Marte-Tejada (Johansel)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Marte-Tejada (Johansel), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06724</MDSlipOpNo> 

<MDIndexTitle>People v Marte-Tejada<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Marte-Tejada (Johansel)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Johansel Marte-Tejada, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York,        

 Respondent, 

 

 -against- 

 

 Johansel Marte-Tejada, 

 Defendant-Appellant. 

 _________________________ 

 

Richard M. Greenberg, Office of the Appellate Defender, New York (Margaret E. Knight of counsel), and Willkie Farr & Gallagher LLP, New York (Debra McElligott of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (Christopher P. Marinelli of counsel), for respondent.  

 _________________________ 

 

 Judgment, Supreme Court, Supreme Court, New York County (Lewis Bart Stone, J. at speedy trial motions and jury trial; Jill Konviser, J. at sentencing), rendered October 15, 2013, as amended, January 30, 2014, convicting defendant of assault in the second degree and attempted assault in the second degree, and sentencing him to an aggregate term of six years, unanimously affirmed. 

 The court properly denied defendant's speedy trial motions. Except as to a five-day period where the People concede includability on appeal, the record supports the court's findings of excludability, including a finding in which it providently disregarded the People's erroneous concession (see e.g. People v Wells, 16 AD3d 174 [1st Dept 2005], lv denied 5 NY3d 796 [2005]). 

Each of the periods of delay contested by defendant on appeal was the result of motions or other proceedings (see CPL 30.30[4][a]), or were attributable to defendant (30.30[4][b]) or a codefendant (30.30[4][d]). We decline to reach the People's argument that the court should have excluded an additional period. 

 With regard to the attempted assault charge the court correctly declined to charge justification, or to submit attempted third-degree assault as a lesser included offense. There was no reasonable view of the evidence, considered in the light most favorable to defendant (see generally People v Watts, 57 NY2d 299, 301 [1982]; People v Scarborough, 49 NY2d 364, 371-374 [1980]), that at the time defendant broke a glass bottle over the victim's head, the victim reasonably appeared to pose any threat to defendant, either personally or by aiding other persons, or that the bottle, as used, did not constitute a dangerous instrument. 

 The court properly replaced a sworn juror for medical reasons. Defendant's challenge to the discharge is similar to an argument raised on a codefendant's appeal (People v Meran, 143 AD3d 423 [1st Dept 2016], lv denied 28 NY3d 1074 [2016]), where, in an alternative holding, we found that argument unavailing, and we see no reason to reach a different conclusion here. 

 We perceive no basis for reducing the sentence. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 _______________________ 

 CLERK 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Abner<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Abner (Brian)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Abner (Brian), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06725</MDSlipOpNo> 

<MDIndexTitle>People v Abner<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Abner (Brian)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v Brian Abner, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York, 

 Respondent, 

 

 -against- 

 

 Brian Abner, 

 Defendant-Appellant. 

 _________________________ 

 

Robert S. Dean, Center for Appellate Litigation, New York (Jody Ratner of counsel), for appellant. 

 

Cyrus R. Vance, Jr., District Attorney, New York (Alan Gadlin of counsel), for respondent. 

 _________________________ 

 

 An appeal having been taken to this Court by the above-named appellant from a judgment of the Supreme Court, New York County (Laura A. Ward, J.), rendered January 25, 2016, 

 

 Said appeal having been argued by counsel for the respective parties, due deliberation having been had thereon, and finding the sentence not excessive, 

 

 It is unanimously ordered that the judgment so appealed from be and the same is hereby affirmed. 

 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK 

 

Counsel for appellant is referred to 

 606.5, Rules of the Appellate 

Division, First Department. 

 

 

<!DOCTYPE NYOOpinion SYSTEM "NYOOpinion.dtd"> 

<NYOOpinion> 

<MetadataBlock> 

<MDCiteTitle>People v Terry<MDCite>???</MDCite></MDCiteTitle> 

<MDTOCTitle>People v Terry (David)<MDCite>???</MDCite></MDTOCTitle> 

<MDTOCTitle>Terry (David), People v<MDCite>???</MDCite></MDTOCTitle> 

<MDSlipOpNo>2017 NYSlipOp 06726</MDSlipOpNo> 

<MDIndexTitle>People v Terry<MDCite>???</MDCite></MDIndexTitle> 

<MDShortTitle>People v Terry (David)</MDShortTitle> 

<MDWestRef2>[\M\N NYS3d \M\N]</MDWestRef2> 

</MetadataBlock> 

<Pg n="1" /> 

<PartyBlock> 

<Party>The People of the State of New York, Respondent Appellant, v David Terry, Respondent Appellant.</Party> 

</PartyBlock> 

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ. 

 

 The People of the State of New York, 

 Respondent, 

 

 -against- 

 

 David Terry, 

 Defendant-Appellant. 

 _________________________ 

 

Rosemary Herbert, Office of the Appellate Defender, New York (Samuel J. Mendez of counsel), for appellant. 

 _________________________ 

 

 Judgment, Supreme Court, New York County (Barbara F. Newman, J.), rendered February 26, 2015, unanimously affirmed. 

 Application by defendant's counsel to withdraw as counsel is granted (see Anders v California, 386 US 738 [1967]; People v Saunders, 52 AD2d 833 [1st Dept 1976]). We have reviewed this record and agree with defendant's assigned counsel that there are no non-frivolous points which could be raised on this appeal. 

 Pursuant to Criminal Procedure Law  460.20, defendant may apply for leave to appeal to the Court of Appeals by making application to the Chief Judge of that Court and by submitting such application to the Clerk of that Court or to a Justice of the Appellate Division of the Supreme Court of this Department on reasonable notice to the respondent within thirty (30) days after service of a copy of this order. 

 Denial of the application for permission to appeal by the  judge or justice first applied to is final and no new application may thereafter be made to any other judge or justice. 

 THIS CONSTITUTES THE DECISION AND ORDER 

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 

 

 ENTERED:  SEPTEMBER 28, 2017 

 

 

 

 

 

 _______________________ 

 CLERK